## SOUTHLAND LIFE INS. CO. v. NORTON.
### (No. 8985.)

Court of Civil Appeals of Texas. Galveston.
July 15, 1927.

Rehearing Denied Sept. 20, 1927.

**1. Insurance ⬅665(3)—Evidence held to sustain finding that misrepresentations in application for life insurance were not material to risk, nor made with intent to deceive (Rev. St. 1925, art. 5043).**

In suit to recover as beneficiary in life insurance policy, evidence *held* sufficient to sustain findings that misrepresentations in application for insurance, pleaded as a defense against liability on policy, were not material to risk, and were not made with intent to deceive, and could not have reasonably induced issuance of policy so as to affect its validity, within meaning of Rev. St. 1925, art. 5043.

**2. Insurance ⬅291(1)—Applicant's failure to disclose previous illness or injuries will not be deemed material, unless affecting general health or lessening life expectancy.**

Failure of applicant for life insurance to disclose previous illness or physical injuries in application for insurance will not, as matter of law, be deemed material to the risk, unless such illness or injuries was of nature affecting general health of applicant, and such as to lessen term of his life expectancy.

**3. Witnesses ⬅405(1)—Evidence that insurer's physician in examining witness did not correctly write answers to all questions in application held properly admitted as against objection of improper impeachment.**

In a suit on a life insurance policy, in which defendant relied on alleged misrepresentations in the application for insurance, and defendant's physician, who examined the deceased and wrote his answers to the questions asked him in such examination, did not testify that he had any recollection of what the answers were, but knew that he had correctly written these answers in his report, because it was his uniform custom to correctly record the answers of applicants for insurance examined by him, testimony of a witness for plaintiffs that he was examined by this physician for life insurance on approximately the same date as the deceased, and that the physician had not in such examination correctly written his answers to the questions propounded him, *held* properly admitted over the objection that it was an attempt to impeach the physician on a collateral immaterial issue.

**4. Evidence ⬅99—Any evidence tending to prove or disprove fact involved in issue is relevant and material.**

Any evidence which tends to prove or disprove any fact involved in issue before court is relevant and material, whether it only tends to prove or disprove link in chain of circumstances from which fact in issue may be reasonably inferred.

**5. Insurance ⬅648(1)—Testimony of insurer's medical director as to exercising more care in passing on application for particular**

insurance carried by deceased held inadmissible.

In suit on life insurance policy wherein defense was misrepresentations in application, testimony of medical director for insurer as to exercising more care in passing on application for particular type of insurance carried by deceased *held* inadmissible as being immaterial.

**6. Attorney and client ⬅166(3)—Finding that $5,000 was reasonable attorney's fee in suit on life policy held sustained by evidence.**

Finding that $5,000 was reasonable attorney's fee for prosecuting suit on $10,000 insurance policy *held* sustained by evidence.

Appeal from District Court, Harris County; Roy F. Campbell, Judge.

Suit by Margaret S. Nickles against the Southland Life Insurance Company, wherein Court Norton, as executor, was substituted as plaintiff after her death. Judgment for plaintiff, and defendant appeals. Affirmed.

Seay, Seay, Malone & Lipscomb, of Dallas, and Hunt & Teagle, of Houston, for appellant.

Gill, Jones & Tyler and McFarlane & Dillard, all of Houston, for appellee.

PLEASANTS, C. J. This suit was originally brought by Margaret S. Nickles, beneficiary in an insurance policy upon the life of her deceased husband, Charles C. Nickles, issued by appellant, to recover $10,000, the amount stipulated in the policy, and in addition thereto the statutory penalty of 12 per cent. and reasonable attorney's fees, alleged to be $5,000.

After the institution of the suit the original plaintiff died, and appellee, executor, by proper proceedings became the plaintiff in the suit.

As a defense to plaintiff's cause of action and as ground for cancellation of the contract of insurance, the defendant pleaded false and fraudulent statements made by the insured in answer to questions propounded to him by defendant's medical examiner, which were a part of the application for insurance and were relied on by the defendant in accepting the application and issuing the policy upon which the suit is brought.

Plaintiff by supplemental petition excepted to defendant's answer and specially pleaded that no part of the application or copy thereof was attached to the policy, which expressly provided that it should constitute the entire contract, and that no statements made by any person not embodied in the policy should be binding on the company.

The trial in the court below with a jury resulted in a verdict and judgment in favor of plaintiff for the full amount asked in the petition.

The policy was issued on June 5, 1925, and the insured died on June 25, 1925, after an operation for locked intestines.

The evidence shows that in his answers to

questions propounded to him by defendant's medical examiner, which were attached to and made a part of his application for insurance, the insured made the following statements:

"No. 11. Name below all causes for which you have consulted a physician in the last 10 years—Illness, number of attacks, date, severity and duration, and remaining effects, attending physician's name and address."

To which he gave the following answer:

"Influenza; one; 1918; mild; one week; none; Dr. Collard, Wichita Falls, Texas."

"No. 19. Have you now or have you ever had any other disease or any injury?

To which he answered "No."

Following these answers, the assured made and signed this statement:

"I hereby declare that all statements and answers as written or printed herein and in part 1 of this application are full, complete, and true, whether written by my own hand or not, and I agree that they are to be considered the basis of any insurance issued hereon. I hereby authorize any physician or other person who has or may attend me to disclose to said insurance company any information thus acquired."

This examination of the assured was made on May 19, 1925, the application having been made on the preceding day. A urinalysis of the insured made by Dr. Brumby, one of defendant's medical examiners, disclosed that the insured at the time the application was made was afflicted with pyleo-nephritis, which is an inflamed condition of the kidneys, indicated by the presence of albumen, pus, and casts in the urine. When this condition of the kidneys becomes chronic, it materially affects, if it does not destroy, the insurability of an applicant, but if the disease is acute and only temporary, the insurability of the applicant is not destroyed or necessarily affected. Dr. Brumby testified that after making the examination of the insured he unqualifiedly recommended him for insurance.

When Dr. Brumby's report and recommendation were examined by Dr. Montgomery, the medical examiner in chief for appellant, he discovered that the report contained no answer of the insured to question No. 19, before set out, and on June 2d he wrote Dr. Brumby, calling his attention to this defect in the report, and requesting him to obtain and forward a written signed answer of the insured to this question. Upon receipt of this letter, Dr. Brumby went to the place of business of the deceased and again obtained his answer to the question, which was written by the doctor and signed by the assured. Dr. Montgomery also requested that further urinalysis of the applicant be made. Two such additional examinations were made by Dr. Brumby, neither of which disclosed the albumen, pus, or casts which appeared in the first examination. Upon receipt and examination of these additional reports of Dr. Brumby, the application was finally approved

by Dr. Montgomery and the policy issued by the appellant.

The averments of defendant's answer, setting up the defense of fraud and misrepresentation, charge misrepresentation only in the following particulars:

"In response to question No. 11 under the second section of said application, the deceased, Charles C. Nickles, answered that during the last 10 years he had only consulted one physician, Dr. Collard, of Wichita Falls, Tex.; that such consultation was in reference to a mild attack of influenza which only lasted a period of one week. That said answer was not full, true, and correct in that in the year 1921, the exact date of which is to this defendant unknown, the said Charles C. Nickles had consulted Dr. B. W. Turner, of Houston, Tex., and for a period of several weeks had been treated by said Dr. Turner for a disease known to the medical world as pyleo-nephritis bilateral, and also for an obstruction of the ureter; that said disease was an inflammation of both kidneys and pus in the urine. That also in the year 1921, the exact date being to this defendant unknown, the said Charles C. Nickles had consulted Dr. Alvis E. Greer, of Houston, Tex., and Dr. B. W. Turner for a disease of the stomach, and for a period of several weeks he was treated by said doctors for a condition which they diagnosed as being duodenal ulcer, for which he was given a modified Sippy treatment.

"That also in the latter part of the year 1924, or early part of the year 1925, the exact dates being to this defendant unknown, the said Charles C. Nickles consulted Dr. J. Mark O'Farrell for some acute trouble which Dr. O'Farrell diagnosed as being influenza.

"That in response to question No. 12, the deceased had answered that he was then in good health, when, as a matter of fact, he was suffering from a kidney complaint and stomach trouble at the time of making said answers.

"That in response to question No. 15 the deceased had answered that he had never been under observation, care, or treatment in any hospital, sanitarium, asylum, or similar institution, when, as a matter of fact, he had been under observation, care, and treatment at the private sanitarium of Dr. B. W. Turner for the kidney complaint and also for the stomach trouble above set forth.

"That in response to question No. 19, under the second section of said application, the deceased had answered that he had never had any other disease or injury, when, as a matter of fact, he had had the kidney complaint and the stomach trouble above set forth, which he failed to disclose in said application."

Dr. B. W. Turner, a witness for the defendant, testified:

"I live at 1015 Lovett street, Houston, Tex. I knew C. C. Nickles during his lifetime. I had occasion to treat him. I had occasion to treat him in the year of 1921, to treat Mr. Nickles. I saw him on the 9th of February, 1921, for the first time. I diagnosed the condition that he was suffering from. He had a peculiar condition that would be hard to explain to a jury the details of. It was a temporary obstruction of the drainage tube from the kidneys to the bladder. We call it pyleo-nephritis. When he came to see me in 1921 he had a disease of the kid-

neys that I diagnosed as pyleo-nephritis. Both of the kidneys were involved, but the left was the most serious. To my knowledge there was no other involvement other than the two kidneys. He had a character of obstruction at that time in the tube. I call that a uretal obstruction. He came to see me in 1921, he had pyleo-nephritis with a uretal obstruction. That is what produced the pyleo-nephritis. Both kidneys were involved. I treated him from September until January, from September, 1921, to January, 1922. During that time I gave him approximately eighteen treatments. I saw him eighteen times. I saw him in my office the first time. I also treated him one time at the Baptist Hospital. I treated him by giving him a dilation of the urinal casing, the kidneys, and the pelvis. With reference to what manifestations would this disease make in the man's condition, what symptoms would he have, they would be various symptoms in this case. He had some abdominal pain with pus and albumen in the urine. With reference to whether he suffered pain, it was more of a soreness. He had pus, albumen in his urine. While I was treating Mr. Nickles I told him what was the matter with him. I told him that he had this complaint that I testified about. I told him that he had a colon infection due to an obstruction of the tube of the ureter. The occasion of Mr. Nickle's coming to me was because Dr. Alvis Greer referred to him to me. When a patient first calls on me and I have not treated him before, I obtain a history from him. I obtained a history from Mr. Nickles. He gave me a history of the pains in his stomach and back, chiefly constipation, with pains in the belly."

Dr. Greer, a witness for defendant, testified:

"Yes; I did say something on the date of this operation, the day he died, about having previously treated the man. I had previously treated Nickles for a complaint prior to June 25, 1925. My records show I treated Mr. Nickles from the middle of June, 1921, to the 4th day of August, 1921, for chronic constipation."

With reference to the influenza treatment Dr. O'Farrell testified as follows:

"I treated him for influenza in so far as I could determine from the first and only visit I made. I made one visit. He had symptoms of the grip, and he was suffering some pain, and I prescribed some relief measures and did not see him any more. * * * I do not know if I took his temperature. * * * With reference to whether I diagnosed the case, I did not think the ailment amounted to much, and I gave him only relief measures."

It is not contended by appellant that the failure of the deceased to mention in his application his treatments by Dr. Greer and Dr. O'Farrell of the comparatively trivial complaints referred to in their testimony constituted material misrepresentations, made with intent to deceive the defendant, nor is there any testimony that such misrepresentations were relied on by defendant's medical examiners or influenced in any way their recommendation of the acceptance of the application for insurance. But Dr. Brumby and

Dr. Montgomery each testified emphatically that he would not have recommended the acceptance of the application if he had been informed that the deceased had suffered from pyleo-nephritis in 1921 and 1922, as testified by Dr. Turner.

Upon the question of the character and effect of the pyleo-nephritis for which the deceased was treated by Dr. Turner in 1921 and 1922, in addition to Dr. Turner's testimony which shows that the kidney involvement was due to the obstruction in the ureter which was removed by Dr. Turner's treatment and that such removal entirely relieved the deceased of his kidney trouble, it was further shown that while undergoing this treatment the deceased was not sick in bed a single day, and that he worked at his place of business for from 12 to 16 hours a day and was never in a hospital until the day of his death.

The undisputed evidence shows that deceased's death was not caused by his diseased kidneys. Dr. Hill, who performed an operation upon the deceased shortly before his death to relieve him of locked intestines, testified:

"There was no connection between pyleo-nephritis bilateral and the condition we found in this man when we operated on him."

This witness further testified, in substance, that he had been examining applicants for life insurance for 20 years and for 15 or 20 companies, and that he did not regard the past history of deceased, as shown by the testimony of Dr. Turner, as material in determining the insurability of deceased at the time his application was accepted by the appellant. He further testified that he would have rejected the application upon the urinalysis reports showing the specific gravity of deceased's urine, but his testimony as a whole leaves no doubt of his expert opinion that the failure of deceased to disclose to Dr. Brumby his treatment by Dr. Turner for pyleo-nephritis in 1921 and 1922 did not materially affect his insurability.

Dr. E. W. Toma, a witness for defendant, after qualifying as an expert in laboratory urinalysis examinations, testified in effect that in his opinion the urinalysis reports would not indicate a case of chronic pyleo-nephritis, but an acute case; that in chronic pyleo-nephritis cases granular casts are found and generally in an acute condition hyaline casts; and that if the condition shown by the reports had been an old condition, it would not have cleared up in a week's time and given two negative reports as in this case.

This witness continued that he did not think there was any connection between the previous history of pyleo-nephritis and the pyleo-nephritis shown by these reports; that in the previous history there was an obstructed ureter, and this would be a toxic

condition; that he would say that the former obstruction of the ureter, if it had ever existed, was permanently cured; that if there was not a permanent cure there, we would expect to find granular casts; that if the obstruction was previously removed, he would hardly think it would recur; that the urinalysis reports present a picture of an acute condition; that the result of a chronic pyleonephritis would give you a different picture; that with reference to whether an examiner would have been reasonable or unreasonable in turning this man down on his past history, he did not know where the past history would come in, in view of the present.

Neither Dr. Brumby nor Dr. Montgomery gives any reason or scientific medical basis for their statement that the application would have been rejected if they had been informed of the pyleo-nephritis for which deceased was treated by Dr. Turner.

The evidence further shows that the deceased did not voluntarily apply to appellant for insurance upon his life, but his application for insurance was solicited and obtained by an agent of appellant who went to deceased's place of business for that purpose.

Upon this state of the evidence, the jury made the following findings in response to special issues submitted by the court:

(1) That the defendant company, under all the facts and circumstances known to it at the time, would have issued the policy applied for by the deceased if his original application had disclosed that he had been treated by Dr. Turner from September, 1921, to January, 1922, for pyleo-nephritis bilateral with a uretal obstruction.

(2) That the deceased did not know at the time he made his application for the policy that he had had and had been treated by Dr. Turner from September, 1921, to January, 1922, for pyleo-nephritis bilateral with a uretal obstruction.

(3) That the failure of deceased to disclose to defendant in his application for insurance the fact of his treatment by Dr. Turner from September, 1921, to January, 1922, for pyleonephritis bilateral with a uretal obstruction was not material to the risk assumed by defendant in issuing the policy.

In response to issues 4, 5, and 6 submitted by the court, the jury made findings in reference to the failure of the deceased to disclose in his application the fact of his treatment by Dr. O'Farrell for influenza in February, 1925, identical with findings Nos. 1, 2, and 3 in reference to the pyleo-nephritis for which he was treated by Dr. Turner.

In response to special issue No. 7, the jury found that the deceased did not intend by any of the answers in his application to deceive the defendant and thereby obtain insurance from it.

In response to special issue No. 8, the jury found that $5,000 was a reasonable fee for the services rendered and required of appellee's attorneys.

Under 41 propositions appellant, in a brief of more than 300 pages in which many cases from this and other states are cited and discussed, assails the judgment from many angles. It is unnecessary and impossible in an opinion of reasonable length to discuss these numerous propositions in detail, and we shall only discuss the questions presented which we deem material in the disposition of the appeal.

Appellant's first contention is that the trial court erred in submitting any issue of fact to the jury and in refusing to instruct the jury to return a verdict in favor of defendant. This contention is thus presented in appellant's brief:

"The undisputed evidence in the record showed clearly that the deceased, Charles C. Nickles, failed to make full, complete, and true answers in his application for a policy of insurance; that the misrepresentations which were thus presented by his application were false and fraudulent, were known to him to have been false; that they related to material matters affecting the risk; that appellant relied upon same and would not have issued the policy in question had a full, complete, and true disclosure of the facts been made; and that appellant was entitled, under all the facts and circumstances in the record, to a peremptory instruction in its favor, and it was error to submit the case to the jury."

[1] We cannot agree with appellant in this proposition. The evidence before set out is sufficient to sustain the findings of the jury that the misrepresentations in the application for insurance pleaded by appellant as a defense against its liability upon the policy issued by it to deceased were not material to the risk, and were not made with intent to deceive, and could not have reasonably induced the issuance of the policy.

Article 5043, Revised Statutes 1925, provides that misrepresentations in an application for life insurance shall not affect the validity of the policy issued on the application unless the matter or thing misrepresented was material to the risk or contributed to the contingency or event on which the policy became due, and that the question of whether the matter or thing misrepresented was material or contributed to the maturity of the policy is a question of fact to be determined by the court or jury trying the case.

[2] It is a settled rule of decision in this state, sustained by the great weight of authority, that the failure of an applicant to disclose previous illness or physical injuries in his application for insurance will not, as a matter of law, be deemed material to the risk unless such illness or injuries was of such a nature as to affect the general health of the applicant and lessen the term of his life expectancy. This was the effect of the holding in the case of Insurance Company v.

Evert (Tex. Civ. App.) 178 S. W. 643, in which case a writ of error was denied by our Supreme Court.

In the case of Billings v. Life Insurance Co., 70 Vt. 482, 41 A. 518, the Supreme Court of Vermont, in discussing what character of previous illness should be held material in an application for life insurance, says:

" 'Illness,' as used, means a disease or ailment of such a character as to affect the general soundness and healthfulness of the system seriously, and not a mere temporary indisposition, which does not tend to undermine and weaken the constitution of the insured."

This language is quoted with approval by the United States Circuit Court of Appeals in the case of Miller v. Maryland Casualty Co., 193 F. 343, in which case it is held that a representation by an applicant that he had never been paid any indemnity for a previous accident or illness, when he had in fact been paid an indemnity for an operation for chronic appendicitis, was immaterial in the absence of proof that the operation had impaired his general health.

In the case of Cady v. F. & C. Co., 134 Wis. 322, 113 N. W. 967, 17 L. R. A. (N. S.) 260, the Supreme Court of Wisconsin says:

"It is considered that an affection, even though curable only by medical or surgical treatment, but nevertheless readily remediable and so not necessarily tending to shorten life, before it has become so far developed as to have some bearing, in præsenti, upon the general health, is not a 'disease' as one would ordinarily understand that term; and that to go further and give to such term, as urged in the contract in question, its technical meaning, would be going too far."

Many other cases are cited in appellee's brief from other states, and several by the United States Circuit Court of Appeals, which sustain the rule that in cases of this kind the materiality of the misrepresentations is a question of fact for the jury, unless the undisputed evidence shows that the undisclosed previous sickness of the applicant was of such character as tended to affect his general health and lessen his life expectancy.

Some of the more recent cases in this state in which this rule has been followed are Insurance Co. v. Gamble (Tex. Civ. App.) 257 S. W. 1005, Southern Surety Co. v. Butler (Tex. Civ. App.) 247 S. W. 611, and Southern Surety Co. v. Benton (Tex. Civ. App.) 267 S. W. 302.

We think it clear that the evidence in this case does not conclusively show that the misrepresentations pleaded by the appellant were material to the risk, as that term is used in the statute above cited, and that the finding of the jury that the misrepresentations were not material is amply supported by the evidence. There is no evidence that the previous sickness, which was the matter misrepresented by the deceased, contributed to cause his death and the consequent maturity of the policy.

The misrepresentations not being as to a matter or thing material to the risk, or which contributed to the maturity of the policy, the question of the intent of the deceased in making them is immaterial. We think, however, the finding of the jury that the deceased's failure to mention his previous treatment by Dr. Turner for pyleo-nephritis, caused by obstruction in his ureter, was not fraudulent and with intent to deceive the appellant is supported by sufficient evidence.

But we are not prepared to commit ourselves to the proposition that, if the misrepresentations had been of a matter which was material to the risk assumed by appellant in issuing the policy, and the policy had been issued in reliance on such representation, appellant's liability on the policy would be dependent on the intention of the deceased in making the misrepresentations. Such rule cannot be applied to any other kind of contract, and no just reason occurs to us for an exception in insurance contracts. It may be that the rule stated by appellee has become stare decisis in this state, but as the question is not material in this case we do not feel constrained to decide it.

Our conclusions above expressed make it unnecessary for us to discuss the remaining propositions presented by appellant other than those complaining of the ruling of the trial court on the admissibility of testimony, of the charge of the court, and of the verdict of the jury upon the amount of attorney's fees plaintiff was entitled to recover.

[3] We do not think the court erred in permitting plaintiff to introduce the testimony of Mr. Tyler, to the effect that defendant's witness, Dr. Brumby, had examined him for life insurance at a date near the time he examined the deceased and had not in such examination correctly written the answers of the witness to all of the printed questions attached to the application. Dr. Brumby had testified that he asked and correctly recorded the answers of the deceased to all of the questions contained in the application, and had further testified:

"With reference to me speaking of having asked each one of these questions to a man, that I would not undertake to remember that now with the number that I handle, or do I know it from custom, that is my custom in answering those questions. I handle on an average of 50 or 75 of these applications per month for the defendant company. This has been nearly a year ago. I have handled 600 or 700 since this. * * * With reference to that being about 7,000 questions I have asked since this one of various applicants, my answer is, Probably so. I was as careful in this case as the average case. I always try to be careful and get the answer to every question. * * * With reference to whether I was any more careful in this case or less careful than I was when I examined you for life insurance, my answer is,

I do not know, I do not suppose any more so with you than with him. I do not think I was any less so (i. e., careful) with you than I was with him. I recall my examination of you for life insurance. I recall asking you every question in the blank."

In rebuttal of this testimony, appellee placed Mr. Tyler on the stand and elicited from him testimony to the effect that Dr. Brumby did not, when he examined witness for insurance, correctly record the answers of witness to all of the questions contained in his application, and that witness after reading 3 of these answers had corrected them.

We think the testimony of Mr. Tyler was relevant to the issue of whether the deceased had in fact made false answers to the questions propounded to him by Dr. Brumby, and was not obnoxious to the objection of appellant that it was an attempt to impeach the witness upon a collateral immaterial issue. Dr. Brumby does not state in his testimony that he had any distinct recollection of the answers of the deceased to all of the questions, but that it was his uniform custom to ask all of the questions contained in an application for insurance and to carefully record the answers, and that he was as careful in this case as in the average case. The fact that in Mr. Tyler's case the doctor had not correctly recorded the answers tended to show that he may have inadvertently erroneously recorded the answers of the deceased in this case.

[4] Any evidence which tends to prove or disprove any fact involved in the issue before the court is relevant and material, and this is true of evidence which only tends to prove or disprove a link in a chain of circumstances from which the fact in issue may be reasonably inferred. Compagnie Des Meteaux Unital v. Victoria Mfg. Co. (Tex. Civ. App.) 107 S. W. 651; San Antonio Traction Co. v. Higdon, 58 Tex. Civ. App. 83, 123 S. W. 732; Bell v. Swim (Tex. Civ. App.) 178 S. W. 850; Dudley v. Strain (Tex. Civ. App.) 130 S. W. 778; Railway Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068.

The trial court did not err in sustaining appellee's objection to the proffered testimony of Dr. Montgomery that, as medical director for appellant, in passing on an application for term insurance (that being the kind of insurance for which the policy in this case was issued) he exercised more care than in passing on applications for other forms of insurance, and that according to the standard established by his company an applicant for term insurance had to be first-class risk in every respect, which meant that the applicant must not have had any previous disease or illness which might leave some lasting impairment of any kind.

[5] We think this testimony was immaterial, and appellee's objection on that ground was properly sustained. The medical standard of insurability, which the witness would have shown was required of the deceased to obtain the insurance applied for by him, was no higher than the standard which the law, as we have before held, applies in determining whether the previous illness of the deceased, which was the matter misrepresented by him, was a matter material to the risk. This is the rule in all kinds of life insurance, and it was not necessary or material for appellant to prove such standard in this case.

[6] We cannot hold upon the evidence in the record that the amount found by the jury for attorney's fees was unreasonable. The only evidence upon this issue was the testimony of Mr. Tyler and Mr. Battaile, both of whom are experienced and prominent attorneys, and qualified to give an opinion upon the reasonableness of appellee's claim for $5,000 attorney's fees. Mr. Tyler, after stating the time and labor required in preparing the case for trial and in trying it in the district court, and the time, labor, and expense that would be required in briefing and arguing the case in the Court of Civil Appeals and the Supreme Court, its appeal being a reasonable certainty, testified that in his opinion a reasonable attorney's fee would be $5,000. Mr. Battaile, who testified for defendant, stated that he thought $500 would be reasonable compensation for the 2 days' time in which plaintiff's attorneys were engaged in trying the case in the district court. He further stated that he was confining his estimate of reasonable attorney's fees to the trial in the district court. He was not asked and gave no opinion upon the question of what would be a reasonable compensation for the entire services of plaintiff's attorneys, including the services that would be required of them in the appellate court. Upon this state of the evidence, we cannot say that the finding of the jury was not supported by sufficient evidence, and we are therefore not authorized to disturb their verdict.

We have considered all of appellant's assignments and propositions, and in our opinion none of them should be sustained. It follows that the judgment should be affirmed, and it is so ordered.

Affirmed.