PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA v. JOHNSON.

No. 7474.

Circuit Court of Appeals, Fifth Circuit.

Dec. 20, 1934.

Adair Rembert and George S. Wright, both of Dallas, Tex., for appellant.

M. B. Harrell; of Greenville, Tex., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

## HUTCHESON, Circuit Judge.

The suit was in equity to charge an insured as trustee of, and to recover back the indemnity appellant had paid on, a contract of accident insurance; also to cancel and annul the contract. The claim was that in his application for the policy and in that for settlement under it for the loss of an eye the insured had falsely and fraudulently represented that he had not had medical or surgical advice or treatment within seven years, and that his health, sight, and hearing were not impaired in any way, whereas he had had medical advice and treatment for his eyes and his sight was impaired.

The defendant denied that he had fraudulently and with intent to deceive made any statements that were false. He further pleaded that in fact and in law, and particularly under the statutes of Texas, the statements plaintiff relies on for recovery were not with regard to matters which were material to and affected the risk assumed, or contributed to the contingency or event on which the policy became due and payable. These are the facts.

Appellee, an active business man in the forties, who was not then wearing glasses, and who had had no trouble with his eyes except as the result of a sinus attack some years before, on April 5, 1933, applied for and obtained a "Pacific Mutual Life and Limb Accident Insurance Policy" providing, among other indemnities, $5,000 for the loss of an eye. In answer to the questions in the application, "Is your health, sight and hearing impaired in any way?" "Are you maimed or deformed, if so, give details?" he answered, "No," and to the question, "What medical or surgical advice or treatment have you had during the past seven years?" "None." On April 19 a ladder on which the insured was standing slipped out from under him, throwing him against a piece of projecting timber which entered and destroyed his right eye. In making a claim for it, defendant stated: "Prior to this accident I did not wear glasses, and I had never had any trouble with my eyes. I have never had any disease of any kind which affected my eyes in any way. However, since my accident I have been told that my left eye is none too strong. I had never noticed this."

Appellant, discovering after it had paid the claim that the insured had at one time had defective vision in, and had been treated for a frontal sinus condition affecting, his right eye, brought this suit to recover the payment back. At the trial, an eye specialist living in Buffalo, Mo., where Johnson had once resided testified to having prescribed glasses for one or two of Johnson's children, and that in 1926 Johnson had come to him complaining of pain over the eye from a frontal sinus condition. "At that time he had a lowered vision in his right eye, and I treated him for the sinus. I did not give him glasses at that time. He came to see me about February 6, 1929, complaining of this frontal sinus, and the vision in his right eye was down much lower than it was in 1926 so I made a thorough examination of his eyes and fitted glasses. At that time the vision for the right eye was 20/400, which means that he can only see at a distance of twenty feet the size letter he should really see at 400 feet. The normal eye reading should be 20-20. The vision of his right eye was 1/20. There was also an inflamed condition of the choroid and retina and there was some atrophy. I gave him glasses to relieve the strain on the good eye; the other eye was 20-30 plus, which would be considered good vision. I advised Mr. Johnson to keep his glasses on, and to come back. He has not

been back since that time." On cross-examination he testified that an eye atrophied from a sinus condition never comes completely back, but that he could not say that the condition would not get considerably better. The doctor who removed the eye after the injury testified that he had not noticed any atrophy of the nerve, or anything seriously wrong with the eye at that time, except the traumatic condition for which it was removed. The assured denied the treatment in 1926. He admitted that he had been treated and fitted with glasses in 1929, but said that he had not found it necessary to wear the glasses and had not worn them. His wife and his associates testified to his having excellent sight; that he was a hunter who could shoot from either shoulder, a baseball player, and generally active in pursuits requiring good sight.

Appellant offered the testimony of officers of the insurance company that had they known of this condition they would not have written the policy. The District Judge thought the statements false, but held that they constituted no defense to the suit under the Texas statutes[1] as construed by the Texas courts, because not material to or affecting the risk assumed, since it plainly appeared that the facts falsely stated in no manner contributed to the contingency or event on which the policy became due and payable. Appellant, not at all disputing the correctness of this fact finding, as indeed it could not, insists that the District Judge misconstrued the Texas statutes as limiting the defense of false statements in the application to cases where they are shown to have been in regard to a matter which has contributed to the injury or event causing the policy to become a claim. It argues that the statutes

recognize such statements as a defense also when they are material to and affect the risk assumed though they do not contribute to it. It says that speaking generally, "the risk may be said to be the perils or contingencies against which the assured is protected." Physicians' Defense Co. v. Cooper (C. C. A.) 199 F. 576, 579, 47 L. R. A. (N. S.) 290. That the risk assumed here was the perils or contingencies of the accidental loss by violent and external means of life, limb, or sight. That it stands established, by the testimony of its officers, that they considered the statements material to the risk, and, as a matter of common knowledge, that the existence in 1929 of the sinus condition and treatment for it, and the defective vision testified to, were material to the risk assumed.

Appellee replies that conceding appellant's construction of the statutes to be correct, that is, that false statements in the application are a defense to a policy if material to the risks assumed in writing it, though they did not contribute to the actual event, there is no showing made here that appellee's statements were falsely made, with intent to deceive or that they were material to the risk. He says that the question, "Is your health, sight or hearing impaired in any way?" must be taken as of the date of the inquiry, and as inquiring with regard to a real, a sensible interference with the insured's getting about as ordinary men do, and so taken, the statement was absolutely true. He says that the other question "What medical or surgical advice or treatment have you had during the last seven years?" must be taken as relating to advice and treatment for some substantial, permanent injury or ailment and that he did not

---

[1] Article 5054 of the Texas laws governing policies provides that any contract of insurance entered into by any corporation doing business in this state shall be held to be a contract made and entered into under and by virtue of its laws.

Article 5043: "Any provision in any contract or policy of insurance issued or contracted for in this State, which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case."

Article 5045: "No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed."

Article 5046: "Misrepresenting loss or death" provides that it shall be no defense to a suit brought upon the contract or policy that misrepresentations or false statements are made in proofs of loss or death unless it be shown on the trial that the false statement made in such proof was fraudulently made and misrepresented a fact material to the question of liability upon the contract of insurance sued on.

regard the temporary matter of the sinus trouble and the fitting of glasses, as coming within it. He says finally, that the statements appellant complains of as false were not, under the undisputed facts, material to the risk of "injury by violent, external and accidental means" which was the risk appellant assumed under the accident contract in question, and they did not "contribute to the contingency or event on which the policy became due."

Agreeing with this contention of appellee, we find it unnecessary to determine whether the statements are shown to have been falsely made, that is with a deliberate intent to deceive. We find it unnecessary too, to decide whether as contended by appellee, and as held by the District Judge, the question whether the statements were material to the risk must be determined by whether they contributed to the accident.[2]

In the Norton Case, a suit on a life insurance policy which, though neither the earliest nor the latest decision, is perhaps the leading case, it is said: "It is a settled rule of decision in this state, sustained by the great weight of authority, that the failure of an applicant to disclose previous illness or physical injuries in his application for insurance will not, as a matter of law, be deemed material to the risk unless such illness or injuries was of such a nature as to affect the general health of the applicant and lessen the term of his life expectancy." Page 1086 of 297 S. W.

And again: "We think it clear that the evidence in this case does not conclusively show that the misrepresentations pleaded by the appellant were material to the risk, as that term is used in the statute above cited, and that the finding of the jury that the misrepresentations were not material is amply supported by the evidence. There is no evidence that the previous sickness, which was the matter misrepresented by the deceased, contributed to cause his death and the consequent maturity of the policy." Page 1087 of 297 S. W.

In Huey v. American Nat. Ins. Co. the Court of Civil Appeals, construing and applying article 5043, said: "That a misrepresentation was a material inducement or not to the issuance of a policy is not necessarily a determination of its materiality to the risk insured against, and a jury finding that but for such misrepresentation the insurance company would not have issued the policy cannot be construed as a finding that same contributed to the injury suffered by appellant. There is totally lacking any evidence to show that the condition for which Huey was treated two years before contributed in any manner to his injury on April 12, 1929. The materiality of the representation to the risk assumed was not clearly and sufficiently submitted. Whether or not the fact misrepresented or concealed would reasonably have increased the chances of the loss insured against, or might reasonably have caused the insurance company to refuse to issue the policy, or to decline to take such risk unless at a higher premium, or which would impose a materially greater risk on the insurer, are matters for consideration in determining the materiality of the misrepresentation. Ætna Life Ins. Co. v. King (Tex. Civ. App.) 208 S. W. 348; Gorman v. Jefferson Life Co. (Tex. Civ. App.) 275 S. W. 248; Indiana, etc., Ins. Co. v. Smith (Tex. Civ. App.) 157 S. W. 755; St. Paul F. & M. Co. v. Huff (Tex. Civ. App.) 172 S. W. 755; 32 C. J. 1286. In Southland Life Ins. Co. v. Norton (Tex. Civ. App.) 297 S. W. 1083, Judge Pleasants announces the settled rule of decision in this state to be that to be material such illness must have been of such character as to affect the general health of the applicant and lessen the term of his life expectancy." Page 343 of 45 S.W.(2d).

Appellant, when confronted with the unquestioned fact that the accident which caused the policy to become a claim was the slipping of the ladder, in no manner caused or contributed to by any defect or impairment in appellee's sight, or any bodily ailment of his of any kind, falls back on the claim that nevertheless the statements were with regard to matters or things material to the risk. Then, when confronted with the equally unquestioned fact that at the time he applied for the policy appellee was not suffering from any ailment or condition which would have in fact materially increased or affected the risk of his liability to ac-

---

[2] Appellee insists that Southland Life Ins. Co. v. Norton (Tex. Civ. App.) 297 S. W. 1083; Id. (Tex. Com. App.) 5 S. W.(2d) 767; Huey v. American Nat. Ins. Co. (Tex. Civ. App.) 45 S.W.(2d) 340; American Nat. Ins. Co. v. Huey (Tex. Com. App.) 66 S.W.(2d) 690; People's Mutual Life Ass'n v. Cavender (Tex. Civ. App.) 46 S.W.(2d) 723; American Cent. Life Insurance Co. v. Alexander (Tex. Com. App.) 56 S.W.(2d) 864; First Texas Prudential Insurance Co. v. Gamble (Tex. Civ. App.) 257 S. W. 1005; First Texas Prudential Insurance Co. v. Pedigo (Tex. Com. App.) 50 S.W.(2d) 1091 so decide. Appellant denies this.

cident, it falls back on the testimony of its officers that had it known of the treatment appellee received in 1929, and the then condition of his right eye, it would not have written the policy.

We may assume that this testimony correctly reflects the opinion of these officers as to the materiality of the statements in question. This would not be proof that the statements plaintiff made were in regard to matters material to the risk, but only evidence on the issue of whether they were. Their materiality would be at last for the court. Huey v. American Nat. Ins. Co. (Tex. Civ. App.) 45 S.W.(2d) 340; article 5043, Revised Civil Statutes of Texas 1925.

We think it clear that the statements, if false, did not, within the meaning of the statutes invoked as those statutes have been construed, have to do with matters or things material to the risk.

The judgment is affirmed.