### NATIONAL LIFE & ACCIDENT INS. CO. v. KINNEY. (No. 11416.)

(Court of Civil Appeals of Texas. Fort Worth. Feb. 13, 1926.) ·

**1. Appeal and error ⬅═₂₃731(1).**

Assignment of error, that verdict of jury is contrary to evidence produced in trial, is too general for consideration.

**2. Appeal and error ⬅═₂₃731(1).**

Assignment of error that verdict of jury is contrary to law covering cause is too general for consideration.

**3. Insurance ⬅═₂₃665(3)—Evidence showing former policy issued, but failing to show that it was still in force, held not to sustain defense based on condition against other insurance.**

Where life insurance policy was conditioned on there being no other policy of company in force at date of issuance, evidence showing that former policy had been issued in preceding year, but not showing that it was in force at time of issuance of policy in question, *held* not to establish defense based on condition.

**4. Insurance ⬅═₂₃253.**

Misrepresentation, to avoid life insurance policy, must be willful, with intent to deceive, material, and relied on by insurer, in view of Rev. St. 1911, art. 4741 subd. 4.

**5. Insurance ⬅═₂₃668(7).**

In action on life insurance policy issued without examination, defended on ground of violation of condition declaring policy void if insured were not in good health at time of issuance, evidence *held* for jury on question whether condition had been violated.

Appeal from Denton County Court; Brent C. Jackson, Judge.

Suit by Zack Kinney against the National Life & Accident Insurance Company was instituted in justice court. Judgment for plaintiff upon a trial de novo in the county court, and defendant appeals. Affirmed.

Owsley & Owsley, of Denton, for appellant. Geo. M. Hopkins, of Denton, for appellee.

CONNER, C. J. The appellee, Zack Kinney, instituted this suit in a justice court of Denton county on the 11th day of October, 1924, against the National Life & Accident Insurance Company of Nashville, Tenn., to recover the sum of $114 upon an insurance policy covering the life of his son, Frank Kinney. The trial in that court resulted in a judgment for the plaintiff for $114, together with a penalty of $13.68, and $70 attorneys' fees, aggregating $197.68. From this judgment the insurance company appealed to the county court, where, upon a de novo trial, plaintiff again recovered judgment as before.

It is undisputed that the policy was issued, that Frank Kinney died, and that due proof of his death had been submitted to the company, and that the applicant, Zack Kinney, was the beneficiary in the policy. The defense to the policy was predicated upon two of its conditions, to wit, first, that it should be void "if any policy on the life of insured has been issued by this company and is in force at the date hereof, unless this policy contains an indorsement signed by the secretary of the company validating such prior policy," etc; and, second, "that no liability is assumed by the company prior to the date hereof, nor unless on said date and delivery of this policy the first payment has been legally made and the applicant is then in sound health." Appellant alleged that in fact, at the time of the issuance of the policy under consideration, a former policy on the life of the insured had been issued and was in force, and further that, at the time of the delivery of the policy in question, the insured was not "in sound health."

The only assignments of error presented for our consideration are (1) that the verdict of the jury is contrary to the evidence produced in said trial; (2) that the verdict of the jury is contrary to the law covering this cause; and (3) that the court erred in refusing the defendant's special instruction for an "instructed verdict on the following reasons," etc.

[1, 2] It is quite clear, of course, that the first and second assignments of error are too general for consideration, and hence we will not review the evidence further than may be necessary to support our conclusion in disposing of the error assigned to the court's action in refusing to give appellant's requested peremptory instruction.

[3-5] We think it clear that appellant failed to establish its defense, based upon the allegation that the insured had had a prior policy issued, which was in force at the time of the policy under consideration. While the evidence shows a former policy had been issued in the preceding year, it wholly fails to show that this policy was in force at the time the one in question became effective, if at all. On the other issue, the evidence is substantially as follows: In the application for insurance it was stated that the insured was in "good health." A Mr. Stevenson, the agent who solicited the insurance, testified:

"That at the time he took the application the insured "seemed to be in good health and an ordinary looking negro boy, * * * a healthy

negro boy, * * * that he (the insured) himself paid his weekly premiums up to and including April 7, 1924; * * * that the said Frank Kinney was in apparent good health from the time he solicited the first application until the time he collected the premium on April 7, 1924, during which time he saw Frank Kinney weekly."

The proof showed that the application was made on November 20, 1923, and that Frank Kinney died on May 25, 1924. Zack Kinney, the father, and Polly Kinney, stepmother, both testified that they "knew influenza and pneumonia," and that Frank Kinney was taken sick with these diseases some time in April, 1924 and that he died of pneumonia late in May, 1924.

In behalf of appellant, a Dr. Dobbins testified to the effect that he examined Frank Kinney in 1917, and that he then had acute "aortic regurgitation"; that he treated him for that trouble until 1922; that he "improved slowly" under his care, and appeared to be in fairly good health the last time he saw him; that he did not remember to have told Frank Kinney the name of the disease.

A Dr. Chapman testified to the effect that three or four months before Frank Kinney's death he examined him and found him afflicted with acute "aortic regurgitation," which must have long existed, and thought that his death was caused by this disease.

The proof of death that was furnished the company was signed by Dr. A. C. Amos, and he gave the cause of Frank Kinney's death as "aortic regurgitation"; that the duration of his personal knowledge or belief was "one year, one month, twenty days"; that a contributory or secondary cause of the death was rheumatism, existing for several years. Dr. Amos, however, was not present on the stand, and no witness testified that the name of the disease relied upon was ever stated to either Frank Kinney or the beneficiary, Zack Kinney, and it will be noted that at the time Dr. Dobbins discharged Frank Kinney (in 1922) he stated that Frank Kinney had improved under his treatment slowly, and appeared to be in fairly good health. This was nearly a year prior to the date of the application for the insurance under consideration. The state of the insured's health in the interim is not shown to be bad. It would not be unreasonable for the jury to infer that, after the discharge of Frank Kinney, in 1922, his improvement continued; there being no evidence tending to show that from that time until the date of the application a physician's services were required. It will also be noted that in Dr. Chapman's statement his examination dated only some three or four months before Frank Kinney's death, his death occurring, as stated, on May 25, 1924, and the application was made November 20, 1923, nearly six months previously; so that Dr. Chapman's examination was some two or more months after the date of the application for insurance, in which Frank Kinney stated that he was in good health.

Subdivision 4 of article 4741, Rev. Statutes provides that:

"All statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties."

There is no evidence, as we read the statement of facts, to the effect that the insured or his beneficiary, or even the agent who took his application, knew that Frank Kinney was not in good health at the date he made his application; i. e., that either of these parties made the statement fraudulently. The evidence of Mr. Stevenson, who took the application, is to the effect that he was authorized to solicit applications, and it was the custom of the company to issue policies in sums less than $300 without medical examination. It is fair to assume, therefore, that in such cases the company relied upon the soliciting agent as well as upon the statements of the insured relating to the condition of the applicant's health. If so, it would seem unjust to avoid a policy based upon statements made in good faith by proving after death by expert medical examiners that in their opinion death was caused by some latent ailment of which the insured and the agent knew nothing and had no means of knowing, in the absence of a medical examination.

In Cooley's Briefs on Insurance, vol. 3, p. 1988, it is said, among other things, in speaking of the effect of misrepresentations, that:

"Under the provisions of these statutes a misrepresentation or breach of warranty, to avoid the policy, must be willful, or made fraudulently, with intent to deceive."

And again on page 1958:

"It naturally follows that a misrepresentation, made innocently and in the belief that it is true, will not avoid the policy."

The rule may indeed be regarded as well established that to avoid a policy on the ground of misrepresentation it must be made willfully and with intent to deceive, must have been material, and relied on by the insured.

Not having required a medical examination, and having relied upon the statements of the insured and the soliciting agent, and these statements having been made in good faith, so far as the record discloses, and it not having been shown without dispute that the imputed disease existed in active form on the date of the issuance of this policy, or was the proximate cause of the insured's death, we think the insurance company may not now rely upon the medical examinations.

We conclude on the whole, that the evidence in this case is not of that undisputed character which would enable us to say that

the trial court erred in refusing to give the peremptory instruction in appellant's favor.

It is accordingly ordered that the judgment below be in all things affirmed.