**TEXAS PRUDENTIAL INS. CO. v. BEACH et al.**

**No. 3445.**

Court of Civil Appeals of Texas. El Paso.

Nov. 19, 1936.

Turney, Burges, Culwell & Pollard and J. F. Hulse, all of El Paso, for appellant.

Lea & Edwards, of El Paso, for appellees.

WALTHALL, Justice.

In this suit appellee secured judgment against appellant upon a life insurance policy issued upon the life of her son, Lonnie Fred Beach, in which policy appellee was the beneficiary.

The defense pleaded against liability under the policy was that in the written application for the policy, the insured represented that he had fully recovered from a gunshot wound which he had theretofore received; that said representation was false and was material to the risk. Appellant further defended against liability under the policy on the ground that at the time of the delivery of the policy the insured was not in good health as required by the terms of the policy.

The matters at issue were submitted to a jury on special issues. On the issues as found judgment was entered in favor of appellee, and appellant prosecutes this appeal.

Opinion.

The court submitted all issues to the jury on a preponderance of the evidence.

The jury found: That prior to the issuance of the policy its soliciting agent, G. W. Henderson, had notice of the true physical condition of the insured, Lonnie Fred Beach, as did also its district manager, J. L. De Spain. The jury answered "No" to questions submitted whether they found that the insured "was not in good health" and "was not free from physical defects

and infirmities," at the time of the delivery of the policy.

The jury found that the insured and plaintiffs did not represent to G. W. Henderson, defendant's agent, or to I. L. De Spain, in making application for the policy, that the insured "had fully recovered from a gunshot wound received by him in 1932."

The written application for the policy signed by the insured and upon which the policy was issued contained the statement: "Accidentally shot 1932. Fully recovered."

Appellant submits that the court should have instructed a verdict in its favor "as the undisputed evidence shows that insured represented to defendant in his written application for the policy here sued upon that he had fully recovered from the gunshot wound," that the representation was false, was material to the risk and contributed to the loss, and that there was no evidence that defendant had any knowledge of the insured's true condition.

About eleven months after the application for the policy the insured died, his death resulting from what is described in the evidence as a traumatic aneurism of the arch of the aorta with rupture into esophagus.

Without quoting the evidence, it shows that in May, 1934, at the solicitation of G. W. Henderson, appellant company's soliciting agent policies of life insurance for small amounts were issued on the lives of several of the brothers and sisters of Lonnie Fred Beach in appellant company. In making out the application for the policy for Lonnie Fred Beach G. W. Henderson read the questions in the application for the policy: "Are you now in perfect health?" and "Have you ever suffered from consumption, asthma, spitting of blood, habitual cough, apoplexy, paralysis, heart disease, insanity, fits or convulsions, disease of the liver or kidneys, cancer, ulcers or accident of any kind?" and G. W. Henderson wrote the words in the application as the answers given to the question. To the first of the above questions the answer given and written was, "Yes." To the latter part of the second question, "or accident of any kind," the answer was "Yes." Henderson was then told that Lonnie Fred Beach was accidentally shot in 1932. Henderson then wanted to know if Lonnie Fred Beach had had any other trouble that bothered him since he had the gunshot, and he was then told that he had, that his throat had bothered him, and that his throat had been dilated. Henderson then asked, "Does it bother him now?" to which question the answer was, "No, it does not bother him." The question was then asked Lonnie Fred Beach "You don't feel any pain from your chest?" and the answer was: "No, sir, none whatever." Henderson then made out the application and said (to the applicant's mother who was present): "Well, the boy is under age, you sign it for him." The applicant's mother signed the application, and Henderson said, "I will see you again in a few days; our doctor will have to later examine him." In a few days Henderson came with Mr. De Spain, the agent and manager of the company of the El Paso district, when substantially the same questions were asked and answers given as above. Mr. Henderson and Mr. De Spain were shown the gunshot wound which they examined and were given the names of the doctors and the nurse who attended Lonnie Fred Beach when he was shot, and the hospital at which he stayed. After Henderson and De Spain examined the applicant, Henderson said, "I will bring the Doctor down." In a few days Henderson came with another man. Henderson said: "Mrs. Beach, this man wants to examine Fred." He examined him, asked him substantially the same questions as on previous occasions, and the same answers were given.

Mrs. Beach was present at the time the application for the policy was written; said she did not read the application and did not know what answers were written to the questions in the application. Some weeks after the above the policy was delivered.

As to the immediate cause of the death of Lonnie Fred Beach, the evidence shows the following: A group of boys were endeavoring to lift a part of a section of a railroad iron rail about 17½ feet in length, about 500 pounds in weight. One of the boys lifted one end of the rail and Lonnie Fred Beach attempted to lift the other end, when he dropped it, turned pale, and sat down. He died about five or six days afterwards.

Appellant refers us to State Mutual Life Ins. Co. v. Rosenberry (Tex.Com.App.) 213 S.W. 242, and Brotherhood of R. R. Trainmen v. Roberts, 48 Tex.Civ.App. 325, 107 S.W. 626, as sustaining its proposition. In the first case it was found that the statement in the application to the effect that the applicant had not applied for insurance in any other company which had not been is-

sued was untrue and was material; that the reinstatement of the policy was thereby induced by the fraud of the insured. The other case holds that where the applicant for a policy makes a false statement as to his age and as to whether he had previously been a member of a certain order named, such false statement cannot be held to be waived because the insurer had notice of facts which would cause a person of ordinary prudence to make inquiry, and that such inquiry prosecuted with diligence would have resulted in knowledge of the falsity of the statement; that the doctrine of waiver is founded upon actual and not constructive knowledge.

Here the undisputed evidence shows that while the application contains the statement that the insured had fully recovered from the gunshot wound, the soliciting agent of appellant company had framed that expression and wrote it in the application; that while the statements of the insured as to the gunshot wound, as shown, and as to how the insured felt some eleven months thereafter, might mean that the insured had fully recovered from the gunshot, yet, there is no evidence in the record tending to show that what the insured said was false or fraudulent, or that appellant's soliciting agent, or Mr. De Spain, or the accompanying doctor that examined the insured, were deceived by what the insured said, that is, that his throat did not bother him then, that he felt no pain whatever from his chest or throat, that his throat had been dilated, the evidence shows, we think, that they had all the knowledge of the insured's physical condition that he had. To avoid the policy, under the provisions of our statutes, the insured must have willfully or fraudulently made some misrepresentation of some fact material to the risk with intent to deceive the insurer, and upon which the insurer relied in writing the policy. Articles 4732, 4733, 5043, Vernon's Texas Civil Statutes; American Central Life Ins. Co. v. Alexander (Tex. Com.App.) 56 S.W.(2d) 864, and cases cited; Colorado Life Co. v. Newell (Tex. Civ.App.) 78 S.W.(2d) 1049; National Life & Accident Ins. Co. v. Kinney (Tex.Civ. App.) 282 S.W. 633; Gorman v. Jefferson Standard Life Ins. Co. (Tex.Civ.App.) 275 S.W. 248.

We sustain appellant's proposition that the attorney's fee of $250 is excessive and that a remittitur of $125 should be allowed. It is ordered should a remittitur of $125 be filed in this court by appellee within twenty days next hereafter the case will be affirmed, otherwise it will be reversed and remanded.

We have considered all of appellant's propositions not discussed, and they are overruled.

The case is affirmed, conditionally, as above.