## NATIONAL LIFE & ACCIDENT CO. v. DICKINSON.

### No. 3657.

Court of Civil Appeals of Texas. El Paso.

March 31, 1938.

Rehearing Denied April 21, 1938.

R. A. D. Morton and H. D. Stringer, both of El Paso, for appellant.

R. E. Cunningham and Alex Silverman, both of El Paso, for appellee.

WALTHALL, Justice.

Appellant, National Life & Accident Insurance Company, as plaintiff, filed this suit on December 15, 1936, against appellee, Mrs. Vera C. Dickinson, to cancel a life insurance policy issued by appellant company on July 3, 1936, on the life of appellee's husband, Fred P. Dickinson, for $1,181, alleging as cause for its cancellation that several untrue and false answers were made by Dickinson in answering questions asked him in his application for insurance, and which answers were made a part of the policy.

The particular matters about which it was alleged Dickinson gave untrue and false answers were: (a) If he had ever had syphilis, and he answered "No," whereas he did have; (b) he was asked about consulting a physician, and he answered "No," whereas he had consulted a physician for various ailments; (c) whether he had been an inmate of a hospital, and answered "No," when he had been an inmate of a hospital; (d) he was asked to give the names of physicians consulted, and he gave the name of only one, when he had consulted several; (e) he was asked if any physician ever gave unfavorable opinion of his health with reference to military or naval service, to which he answered "No," when he had appeared before a medical board in 1933, and on examination was disqualified for active duty in the navy on account of his health, and he was then so advised; (f) it was alleged that the policy and application provided that the policy should not become effective unless it was delivered to Dickinson while he was in good health, and that Dickinson was not in good health when the policy was delivered to him. Appellant alleged that by reason of the matters stated the insurance contract never took effect, and rescission was sought on that ground.

Appellee was the beneficiary in the policy, and Dickinson died on September 23, 1936, of bronchopneumonia. Before suit was filed tender was made of all premiums paid and accrued interest, and tender refused; the tender was renewed in the petition.

Appellee answered denying the allegations made in appellant's petition, and by cross-action prayed recovery on the policy, attorney fees, and penalty; to which appellant filed answer.

The trial court overruled appellant's requested peremptory instruction and submitted the cause to the jury on special issues, all of which the jury answered in favor of appellee, and fixed the attorney fees at $400. The court overruled appellant's motion for judgment non obstante veredicto, and entered judgment in favor of appellee on her cross-action in the sum of $1,084, which included the attorney fees, interest, and penalty. The court overruled appellant's motion for new trial, and appellant appeals.

## Opinion.

In its assignments of error appellant submits that there is no evidence to sustain the jury's answers to questions submitted to the effect whether Dickinson made true answers in the application respecting syphilis; nor whether the answers were made with no intention to deceive; nor that at the time the policy was delivered he did not have syphilis; nor that at the time the policy was delivered he was in good health; nor to questions respecting consultation with physician; nor to questions regarding consulting a physician without intention to deceive; nor to answers to questions to the effect that he made true answers respecting any physician ever consulted; nor that he made answers to the consulting physician without intention to deceive; nor respecting his being an inmate of a hospital; nor his being an inmate in a hospital without intention to deceive; nor that he made true answers respecting any physician's unfavorable opinion of his health with reference to military or naval service without intention to deceive.

To questions submitted the jury found that appellant did not rely on such representations in issuing the policy sued on; that syphilis did not cause or contribute to cause the death of Dickinson; that Dickinson's answer "No" to the question, "Have you ever had rheumatism, gout or syphilis," was not untrue at the time it was made, and, conversely, that his answer to the above question was true at the time it was made; that at the time of the delivery of the policy Dickinson was in good health.

The evidence shows that Dickinson was taken to William Beaumont Hospital where

he died. He was there attended by the physicians in charge. Col. Francis E. Weatherby (physician) testified: "The actual cause of his (Dickinson's) death was bronchopneumonia." Major Semon C. Schwartz (physician) testified, to the question: "Now, Major, a man who has syphilis is not as well qualified, from the standpoint of physical soundness, to combat any disease as a man is who doesn't have syphilis?" The witness answered: "I don't believe that the fact a man has syphilis makes much difference whether he is going to get pneumonia or typhoid fever or any other disease."

Dr. Ernest B. Thompson, one of the examiners for appellant insurance company, and to whom Dickinson was referred for examination, said it was quite possible for a man to have syphilis without its being discovered on the examination he made; that he found no indication of it; Dickinson answered "no" to the question put to him as to whether he had syphilis; witness checked whether or not Dickinson was telling him the truth in his answers, and verified them by physical examination; a man may have it (syphilis) over a course of years and not know it; testified at length to the tests applied in discovering syphilis; had Dickinson stripped in making his examination; found nothing wrong with him; he seemed to be in good health, and witness so believed. The examination was extensive, covered tests of physical ailments, and the evidence thereon too extensive to even refer to here.

There is some conflict in the evidence on some of the facts submitted to the jury.

Mrs. Vera C. Dickinson, appellee, testified: Was married to Dickinson in 1923; lived together as husband and wife to the time of his death; had three children; when married Dickinson was in the navy; he got out of the navy in 1929, and they lived in El Paso since that time; stated his work; worked every day he had work to do; was sick with bilious attack about two weeks and called Dr. Safford; witness is a graduate nurse; "he (Dickinson) was never sick, nothing to speak of." Question: "Did you ever know there was anything wrong with him?" Answer: "No. Dr. Safford treated him when he had flu, in 1933."

Mayor of El Paso, Marvin A. Harlan, testified: Knew Dickinson some two or three years by coming in contact with him; said: "He appeared to be in good health."

We have thoroughly examined the evidence covering some 173 pages of the record and exhibits, in considering whether it is sufficient to require the submission of such issues to the jury and to sustain the findings upon such facts as were submitted, and found and have concluded that it is sufficient.

■■ Appellant insists, in its very able brief, that at the time the policy of insurance was delivered to him, and at the time he had his application therefor, Dickinson was suffering from syphilis and running positive Wasserman and Kahn tests, and also that at that time he had an Argyll-Robertson eye, typical of syphilis, and that any doubt of such condition was dispelled by the evidence as shown by the findings at the autopsy performed on Dickinson's body after his death; both Col. Weatherby and Major Schwartz having testified that gumma or gummata, a sort of abscess produced by an organism which was alone caused by syphilis, was found in the brain, and which was the manifestation of the tertiary or last stage of syphilis.

We refer to the above statement to further say that the condition of Dickinson as indicated was discovered by the autopsy performed, which condition, it seems, was not apparent, or at least was not observed by the physicians at the time of his application for the policy nor at the time of its delivery, and appellant reasons from the condition thus discovered that Dickinson "certainly must have known" that appellant would not have considered the issuance of its policy had it known his condition of health, and further reasons that Dickinson knew the condition of his health, and, so knowing, his answers in the application were knowingly false and made with intention to deceive. The evidence sufficiently shows that none of the physicians suggested to Dickinson that he had syphilis. The evidence does not indicate that he knew it. The evidence of the examining physician for the policy makes him say that he did not have syphilis, and that is all the evidence in the record as to his knowledge of it. The evidence of some of the physicians as above stated indicate that one in Dickinson's condition might live out his normal life and not know his real condition. The jury, from their findings, must have so believed. The

appellate court considers primarily the sufficiency of the evidence to submit the issues to the jury. The evidence shows without controversy that Dickinson died of bronchopneumonia, and the jury found that syphilis did not cause or contribute to cause his death. If Dickinson's death was not caused by or contributed to by syphilis or other disease, it would seem that any representation as to such disease would be immaterial and did not affect the risk.

The jury found that at the time of the delivery of the policy Dickinson was in good health.

We have reviewed the many cases referred to by appellant and appellee on the issues above involved; they seem to us to be issues of fact rather than of law.

The court was not in error in refusing appellant's requested instruction for a verdict; nor in denying its motion for judgment; nor in overruling its motion for a new trial, because of the jury's findings on the issue of Dickinson's good health at the time of the delivery of the policy.

We find no reversible error in the argument of one of counsel in stating to the jury, "We urge you to answer questions one through twenty-two, and twenty-three through forty-five, yes," and in counsel's argument to the jury in reference to the clinical report and autopsy report, to the effect that "there is no one here from Washington to prove up this report, and you will have to take it for what it is worth"; nor in the argument of counsel in reference to the questions asked in the application, "if you or I were to attempt to list all the doctors we had consulted, it would take pages."

We have considered appellant's assignments not discussed, and have concluded they present no reversible error. The court did not define the phrase "the intention to deceive" in submitting some of the issues. The term is used in its usual sense, and needed no definition or explanation to be understood. Dunning v. Badger, Tex.Civ.App., 74 S.W.2d 151; Dallas Railroad & Terminal Co. v. Bankston, Tex.Com.App., 51 S.W.2d 304, 309.

The court submitted to the jury to find whether syphilis caused or contributed to cause the death of Dickinson. Appellant objected to its submission and assigns error on the ground that the issue is without pleading, and is not based on any rule of law. We see no reversible error in submitting the issue. There could have been no error in not submitting the issue if it is assumed that the facts submitted were immaterial and does not affect the risks assumed. Article 5045, R.C.S.; First Texas Prudential Ins. Co. v. Pipes, Tex. Civ.App., 56 S.W.2d 203, and similar cases.

We have found no reversible error, and the case is affirmed.