## DOYLE et al. v. GREAT SOUTHERN LIFE INS. CO.

### No. 10725.

Court of Civil Appeals of Texas. Galveston.

March 16, 1939.

Rehearing Denied April 13, 1939.

Lamar Cecil, David C. Marcus, and C. E. Pool, all of Beaumont, for appellants.

Vinson, Elkins, Weems & Francis, Fred R. Switzer, and Simon Frank, all of Houston, for appellee.

MONTEITH, Chief Justice.

This is an appeal from a judgment rendered by the 113th District Court of Harris County in an action brought by Great Southern Life Insurance Company, appellee herein, against Ethel Mary Doyle and husband, C. M. Doyle, Dr. Rogers Pierson, and Roberts Undertaking Company, appellants, for the cancellation of a certain policy of life insurance issued by appellee on the life of Annie Landry. Ethel Mary Doyle, a daughter, was beneficiary of the policy; Dr. Rogers Pierson and Roberts Undertaking Company were assignees of a part of the proceeds of the policy.

The policy was issued to Annie Landry in 1932 for the face amount of $2000. Because of failure to pay premiums said policy was lapsed and terminated. On or about December 18, 1935, Annie Landry made application to appellee for reinstatement of the policy. The application was approved by the Company on December 23, 1935. Annie Landry died on March 11, 1936, as a result of a stroke of apoplexy. This suit was filed on April 27, 1936.

Appellee alleged that in reinstating said policy of insurance, it had relied on the answers to the following questions contained in a written application for reinstatement:

"Question No. Two: Have you had any injury, sickness or ailment since this policy was issued?" To which she answered: "Appendectomy April 1935—O.K."

"Question No. Three: Have you consulted a physician since this policy was issued? If so, whom, for what and why?" To which she answered: "No."

"Question No. Ten: Do you believe that you are now in absolutely first class health? If not, give full details as to any sickness or impairment you may have." To which she answered: "Yes.".

That said application contained the further declaration that the answers to said questions were true, and the policy was issued in consideration thereof, and that said answers formed the basis of the reinstatement.

Appellee alleged further that the answers so made were false and untrue, and were made for the purpose of inducing appellee to reinstate said policy; that said statements made by her misrepresented a fact which was material to and affected the risk assumed by appellee, and had caused appellee to believe that Annie Landry was an insurable risk. It alleged that because she was not in good health at the time of making said application for reinstatement

and of its approval by the Company, that appellee never became liable on the policy. Appellee tendered certain premiums, with interest thereon, and prayed that the policy be canceled and appellants enjoined from claiming any amount thereunder.

Appellants answered by general demurrer, general denial, and special pleas that said policy contained a provision that it could be reinstated at any time upon evidence of insurability satisfactory to the Company and payment of premiums in arrears with interest; that appellee had had ample opportunity to investigate the health of Annie Landry, and that appellee having accepted as satisfactory the evidence of insurability furnished it, it was bound by said policy provisions in respect to said reinstatement. They alleged that the answer of Annie Landry as to whether she had had any injury, sickness or ailment since said policy was issued was not a misrepresentation of a material fact, but that the answer given furnished appellee with sufficient information to enable it to ascertain all the facts with reference to her physical condition. They alleged further that Annie Landry had every reason to believe that she was in good health. at the time she made application for reinstatement of said policy.

The jury in answer to special issues submitted found, in substance, that Annie Landry had syphilis in 1935 prior to making application for reinstatement of said policy, and that her syphilitic condition was material to said risk, but that at the time of making her application for reinstatement she did not know that she had had syphilis during 1935; that she did not make the statements in her application for reinstatement of said policy to induce the Insurance Company to revive the policy, and that she believed that she was in absolutely first class health at the time she signed the application for reinstatement, and did not make the statements for the purpose of deceiving and misleading the appellee.

The jury further found that Annie Landry was not in good health from December 18 to December 23, 1935 (application was approved December 23), and that her physical condition at the time she signed the application for reinstatement was material to the risk. The jury further found that at the time of signing her application for reinstatement she did not know that she was making a false answer to question No. 2 therein, where she was asked: "Have you had any injury, sickness or ailment since this policy was issued?", and answered, "Appendectomy April 1935—O.K.", and that she did not know that in answering said question as she did that she was concealing the fact that she had had syphilis during the year.

The record discloses the following additional facts material to this appeal: That in March, 1935, Annie Landry had her blood tested and it was determined that she was suffering from syphilis, and that she had taken injections therefor from June 1 to August 1, 1935; that she had consulted with both Dr. Rogers Pierson and Dr. W. E. Tatum, physicians of Beaumont, Texas, on numerous occasions in 1935 prior to the reinstatement of said insurance policy; that she was suffering from appendicitis and had an operation in the earlier part of 1935 for the removal of her Fallopian tubes and a fibroid tumor, and that she was suffering from high blood pressure.

Dr. Rogers Pierson, the physician who attended her, testified, however, that he had never told Annie Landry that she had syphilis, nor had he told her about her high blood pressure, or about the removal of her tubes or said fibroid tumor. Both Dr. Joe Daniels and Dr. S. J. Lewis testified that it is possible to have syphilis and yet in good faith think that you are in good health. Dr. Daniels testified as to the same facts in reference to high blood pressure.

The trial court rendered judgment cancelling the reinstatement of said policy, and awarding appellants judgment for the amount of returned premiums tendered by appellee.

It is the contention of appellee that, since the application for the reinstatement of said insurance policy provided that said reinstatement would not go into effect until it should be actually approved by the Company, *while insured was in good health,* and the jury having found that she was not in good health at the time said policy was reinstated, that, therefore, no valid reinstatement ever occurred and the revival of said policy was ineffective.

We cannot agree with this contention. It is definitely established in this State by the weight of authority that, under the provisions of our Statutes, a misrepresentation or breach of warranty, by the

insured, to avoid the policy must be wilful or made fraudulently with intent to deceive.

Article 4732, subd. 4, Revised Civil Statutes 1925, provides:

"No policy of life insurance shall be issued or delivered in this State, or be issued by a life insurance company organized under the laws of this State, unless the same shall contain provisions substantially as follows: * * *

"4. That all statements made by the insured shall, in the absence of fraud be deemed representations and not warranties."

In obedience to this statute, the policy involved herein provided: "All statements made by the insured shall, in the absence of fraud be deemed representations and not warranties."

Article 5049, Revised Civil Statutes 1925, provides: "Every contract or . policy of insurance issued or contracted for in this State shall be accompanied by a written, photographic or printed copy of the application for such insurance policy or contract, as well as a copy of all questions asked and answers given thereto. The provisions of the foregoing articles shall not apply to policies of life insurance in which there is a clause making such policy indisputable after two years or less, provided premiums are duly paid; provided, further, that no defense based upon misrepresentation made in the application for, or in obtaining or securing, any contract of insurance upon the life of any person being or residing in this State shall be valid or enforceable in any suit brought upon such contract two years or more after the date of its issuance, when premiums due on such contract for the said term of two years have been paid to, and received by, the company issuing such contract, without notice to the assured by the company so issuing such contract of its intention to rescind the same on account of misrepresentation so made, unless it shall be shown on the trial that such misrepresentation was material to the risk and intentionally made."

A warranty is defined: "A warranty is a written statement or stipulation inserted on the face of the contract itself, or clearly embodied therein as a part thereof by proper words of reference, whereby the insured expressly contracts as to the existence of certain facts, circumstances, or conditions, the literal truth as to which is essential to the validity of the contract of insurance." 4 Couch, page 2607, Section 818.

A representation is defined: "A representation is an oral or written statement which precedes the contract of insurance and is no part thereof, unless it be otherwise stipulated, made by the insured, or his authorized agent, to the underwriter, or his authorized agent, and relates to the facts necessary to enable the underwriter to form his judgment whether he will accept the risk, and at what premium." 4 Couch, p. 2607, Section 818.

The case of Colorado Life Insurance Company v. Newell, Tex.Civ.App., 78 S. W.2d 1049, 1050, involved a state of facts almost identical with those in the instant case. It is not only authority for the proposition that a representation to avoid a policy must be wilful, or made fraudulently with the intent to deceive, but it also answers appellee's contention that the statutes relative to representations in insurance policies do not apply to application for a reinstatement.

In the Newell case, Mrs. Newell made an application for reinstatement of a life insurance policy which contained the following clauses: "As a condition precedent to the reinstatement of said policy, I do hereby certify that the following answers and statements are full, complete and true and that I understand that each of them is material to the risk which you assume should said policy be reinstated."

Said application contained the following questions and answers:

"Question 1: Have you had since said policy was issued and delivered, any disease, ailment, injury or complaint of any kind? Answer: 'Yes' or 'No.' Answer: 'No.' * * *

"Question 3. Are you now in every respect free from disease, injury and/or complaint? Answer 'Yes' or 'No.' Answer: 'Yes.' "

The El Paso Court of Civil Appeals, in its opinion, says: "In the case at bar, there being no allegation that the representations were made with the intent to deceive, and the jury having found upon sufficient evidence that they were not so made, the first contention must be overruled." 78 S.W.2d 1049, at page 1051.

In National Life & Accident Ins. Co. v. Kinney, Tex.Civ.App., 282 S.W. 633, 634,

it is said: "The rule may indeed be regarded as well established that to avoid a policy on the ground of misrepresentation it must be made willfully and with intent to deceive, must have been material, and relied on by the insured."

In the case of American Central Life Ins. Co. v. Alexander, Tex.Com.App., 56 S.W.2d 864, 866, Justice Sharp, in a comprehensive opinion, says:

"The statutes of this state provide what provisions the policies shall contain and what provisions they shall not contain. Articles 4732 and 4733, R.S.1925.

"Subdivision 4 of article 4732 reads as follows: 'That all statements made by the insured shall, in the absence of fraud be deemed representations and not warranties.' * * *

"It is a settled rule in this state that false statements to avoid a policy must have been willful and made with a design to deceive or defraud. Westchester Fire Insurance Co. v. Wagner, 24 Tex.Civ.App. 140, 57 S.W. 876 (writ denied).

"Article 5043, R.S.1925, reads: 'Any provision in any contract or policy of insurance issued or contracted for in this State, which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case.' * * *

"It is also true that if the misrepresentations made by the insured were not intentionally made for the purpose of deceiving the company in obtaining the policy, such misrepresentations offer no legal defense upon the ground of fraud."

The late case of Texas Prudential Ins. Co. v. Beach, Tex.Civ.App., 98 S.W.2d 1057, 1059, in passing on case similar in many respects to the instant case, says: "To avoid the policy, under the provisions of our statutes, the insured must have willfully or fraudulently made some misrepresentation of some fact material to the risk with intent to deceive the insurer, and upon which the insurer relied in writing the policy."

Under the conclusions reached, as above indicated, the facts appearing to have been fully developed herein, it is our duty to sustain the contention of appellants, and to reverse the judgment of the trial court and to here render judgment for the appellants, and it is so done.

Reversed and rendered.