# GREAT SOUTHERN LIFE INSURANCE COMPANY V. ETHEL MARY DOYLE ET AL.

No. 7593.   Decided February 5, 1941.
Rehearing  Overruled  May  28,  1941.
(151  S.  W.,  2d  Series,  197.)

*Vinson, Elkins, Weems & Francis, W. A. Vinson, Fred R. Switzer* and *Simon Frank,* all of Houston, for plaintiff in error.

Under the application for reinstatement of lapsed life insurance policy no liability attached to the company because the condition precedent requiring good health is not governed by statutes relating to representations and warranties, and also because applicant willfully or with an intent to deceive misrepresented herself to be in good health, when she was not. Southern Surety Co. v. Benton, 280 S. W. 551; American Natl. Ins. Co. v. John R. Corley Co., 73 S. W. (2d) 598; Bankers Life Co. v. Sone, 86 Fed. (2d) 781.

*David C. Marcus, Lamar Cecil* and *C. E. Pool,* all of Beaumont, for defendant in error.

In reply to plaintiff's propositions cited: Missouri State Life Ins. Co. v. Hearne, 226 S. W. 789; New York Life Ins. Co. v. Campbell, 83 S. W. (2d) 542; 37 C. J. sec. 239.

MR. JUDGE SLATTON delivered the opinion of the Commission of Appeals, Section B.

September 1, 1932, the insurance company issued its policy of life insurance in the sum of $2000.00 upon the life of Annie Landry, in which Ethel Mary Doyle was named beneficiary.

October 1, 1935, said policy lapsed and under extended insurance provisions thereof terminated on December 1, 1935.

December 18, 1935, insured delivered written application for reinstatement of said policy, bearing same date, which was approved by the company on December 23, 1935.

March 4, 1936, insured suffered a stroke of apoplexy, thereafter dying on March 11, 1936. The insurance company filed this suit to cancel the policy upon two grounds as follows, towit: First, that the insured was not in good health at the time of making the application for reinstatement nor at the time the application was approved by the company; and second, that said reinstatement should be set aside because of representations made by insured which were untrue and were believed and acted upon by the company and were material to the risk.

The issues were submitted to the jury and were answered as follows:

"Special Issue No. 1:

"Do you find from a preponderance of the evidence that Annie Landry answered question No. 2 of her application for reinstatement dated December 18, 1935, for the purpose of inducing the Great Southern Life Insurance Company to revive the policy of insurance in question?

"Answer 'She did' or 'She did not.'

"To which the jury answered 'She did not.'

"Special Issue No. 2:

"Do you find from a preponderance of the evidence that Annie Landry, during the year 1935 and prior to December 18, 1935, had syphilis?

"Answer 'Yes' or 'no'.

"To which the jury answered 'Yes'.

"Special Issue No. 3:

"Do you find from a preponderance of the evidence that Annie Landry on December 18, 1935, knew that she had had syphilis during the year 1935?

"Answer 'Yes' or 'No'.

"To which the jury answered 'No'.

"Special Issue No. 4:

"Do you find from a preponderance of the evidence that Annie Landry's syphilitic condition in 1935, if any, was material to the risk as that term is herein defined?

" 'Material to the risk', as herein defined, means any fact concerning the health, condition or physical history of Annie Landry, which would have induced the insurance company to decline to reinstate the policy at all, or demand the payment of a higher premium.'

"Answer 'Yes' or 'No'.

"To which the jury answered 'Yes'.

"Special Issue No. 5:

"Do you find from a preponderance of the evidence that Annie Landry from December 18, 1935, to December 23, 1935, was not in good health?

"Answer 'She was not in good health' or 'She was in good health.'

"To which the jury answered: 'She was not in good health.'

"Special Issue No. 6:

"Do you find from a preponderance of the evidence that on December 18, 1935, at the time she signed the application for reinstatement, Annie Landry knew that her answer to Question No. 2 therein was false?

"Answer 'She did' or 'She did not.'

"To which the jury answered 'She did not.'

"Special Issue No. 7:

"Do you find from a preponderance of the evidence that on December 18, 1935, at the time she signed the application for reinstatement, Annie Landry knew that in answering Question No. 2 in said application for reinstatement, she was concealing from the Great Southern Life Insurance Company the fact that she had had syphilis during the year?

"Answer 'She knew' or 'She did not know'.

"To which the jury answered 'She did not know.'

"Special Issue No. 8:

"If you have answered the next preceding special issue 'She did', and only in that event, then answer this issue:

"Do you find from a preponderance of the evidence that Annie Landry made her answer to Question No. 2 in the application for reinstatement with the intent to deceive and mislead the Great Southern Life Insurance Company into approving her application for reinstatement?

"Answer 'She did' or She did not.'

"To which the jury made no answer.

"Special Issue No. 9:

"Do you find from a preponderance of the evidence that at the time she signed the application for reinstatement on December 18, 1935, Annie Landry did not believe she was in absolutely first-class health?

"Answer 'She did not believe so' or 'She did believe so.'

"To which the jury answered 'She did believe so.'

"Special Issue No. 10:

"Do you find from a preponderance of the evidence that Annie Landry made her answer to Question No. 10 in the application for reinstatement, that she believed she was in absolutely first-class health, for the purpose of deceiving and misleading the Great Southern Life Insurance Company into accepting said application for reinstatement?

"Answer 'She did' or 'She did not.'

"To which the jury answered 'She did not'.

"Special Issue No. 11:

"Do you find from a preponderance of the evidence that the physical condition of Annie Landry at the time she signed the application for reinstatement on December 18, 1935, was material to the risk assumed by the Great Southern Life Insurance Company, as that term is herein defined?

"Answer 'It was' or 'It was not.'

"To which the jury answered 'It was.' "

The insurance company filed motion for judgment, notwith-

standing the verdict and for judgment on the verdict. The trial court overruled the first mentioned motion, but rendered judgment for the insurance company on the verdict. The beneficiary named in the policy appealed to the Court of Civil Appeals. The Galveston Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of the named beneficiary for the full amount of the policy. 126 S. W. (2d) 735. This court granted writ of error.

It is contended by the insurance company that under the stipulation of the application for reinstatement providing said policy shall not be revived nor go into effect until certificate and contract be approved by the president or vice-president and medical director of said company during the lifetime and good health of applicant, and the finding by the jury that applicant at the time of reinstatement was not in good health, judgment should be rendered denying the beneficiary named in the policy any recovery, as was done by the trial court.

█ It is true that such a stipulation contained in an application for insurance has been held valid and enforceable and not prohibited by our statutes governing contractual provisions of life insurance contracts made in this State. Wright v. Federal Life Insurance Co., 248 S. W. 325 and subsequent cases following it. The stipulation sought to be enforced in this case is contained in an application for reinstatement of a life insurance policy which had been issued and after issuance had lapsed for the nonpayment of premiums. The policy theretofore issued provided the terms upon which it could be reinstated as follows, towit:

"In the event of nonpayment of any premium when due and the application of the value of this policy to the purchase of other insurance, and if such other insurance shall be in force and the original policy shall not have been surrendered to the company and cancelled, this policy may be reinstated at any time upon evidence of insurability satisfactory to the company and payment of arrears of premiums with interest at the rate of 6% per annum."

The quoted provision of the policy represents the contractual requirements of the parties to it with regard to the right of reinstatement. Neither party should be allowed to vary those terms without an additional consideration. Under such a contract the company had the right to require evidence of insurability satisfactory to it, together with the payment of arrear premiums, with interest at the rate of 6% per annum.

The company has not the right under such a provision to add a condition precedent to the taking effect of the reinstatement, i. e., a stipulation of good health, where, as in this case, under the contract the company must determine for itself whether the evidence of insurability furnished by the policyholder is satisfactory to it before the reinstatement becomes effective. The evidence of insurability presented by the policyholder was accepted by the company, presumably because ·it was satisfactory to it. It would indeed be a harsh rule to allow the company to enforce a condition precedent without any additional consideration to support it and not specifically contracted for in the policy of insurance after the company had determined that the evidence of insurability presented to it was satisfactory, accepted the reinstatement of the policy and after the death of the policyholder. In Corpus Juris, Vol. 37, Sec. 239, p. 497, it is said:

"Where the policy specifies the conditions or terms upon which reinstatement may be obtained, insurer may not enlarge such terms or impose additional conditions unless such additional conditions are supported by a consideration. * * *"

The rule stated is applicable to the present case. We also approve the following statement of the law in the case of Missouri State Life Insurance Company v. Hearne, 226 S. W. 789, by the Galveston Court of Civil Appeals, at page 794:

"We are also of the opinion that appellee's contention, that if the suicide clause in the application for reinstatement should be regarded as a part of the contract, this provision is void for want of consideration, is sound."

We are of the opinion that the stipulation inserted in the application for reinstatement of the policy in suit is without consideration and therefore cannot be enforced. This holding is not in virtue of our statutes providing for various provisions to be contained in insurance contracts made in this State, but because of the above mentioned provision of the contract pertaining to reinstatement of the policy.

■ It is contended by the insurance company that the Court of Civil Appeals erred in reversing the judgment of the trial court on the theory that Subdivision 4 of Article 4732, Vernon's Annotated Civil Statutes of Texas, 1925, applies to representations contained in an application for reinstatement of a life insurance policy and before the insurance company could avoid the policy in suit on such misrepresentations it was necessary to plead and

prove that the applicant willfully and with intent to deceive misrepresented the material facts in regard to applicant's insurability.

It has been decided in this State that the statute mentioned has no application to an application for a reinstatement of a life insurance policy to the extent of permitting the incontestable clause contained in the lapsed policy to preclude a defense of fraud in procuring the reinstatement of the policy. State Mutual Life Insurance Co. v. Rosenberry, 213 S. W. 242 (Com. App.) Nor does the statute preclude subsequent agreement between the insurance company and the insured with regard to premium notes. Southland Life Insurance Co. v. Hopkins, 244 S. W. 989; Pacific Mutual Life Insurance Co. v. Thurman, 126 Texas 363, 89 S. W. (2d) 202.

In the present suit, under the contract with regard to reinstatement, the company had the right to require evidence of insurability satisfactory to it. The company propounded questions to the applicant to ascertain evidence of insurability. The very nature of the inquiries indicate that the company was seeking information, much of which would include the opinion of the applicant. Under such circumstances, all the company could rightfully expect of the applicant was that she would honestly answer all such questions. If the applicant had a disease of which she had no knowledge at the time of answering the inquiries, which seems to be the case as found by the jury, then her failure to disclose that which she did not know cannot be said to be a misrepresentation. The insurance company designated the statements contained in the application representations as distinguished from warranties. Therefore, it had the right to expect only good faith answers of the applicant. The statements contained in the application for reinstatement being representations as designated by the parties, the company has not the right to insist on a forfeiture of the policy "in case the applicant omitted some facts requisite to make any one of the numerous answers full because her attention was not particularly called to it or because she did not deem it material to a full answer." Reppond v. National Life Company of America, 100 Texas 519, 101 S. W. 786.

The statement contained in the application for reinstatement not amounting in law to warranties, the rules of law announced in the case of Kansas Mutual Life Insurance Co. v. Pinson, 94 Texas 553, 63 S. W. 531, do not apply in this case.

In the case of Colorado Life Insurance Company v. Newell, 78 S. W. (2d) 1049, (writ of error refused) there was an ap-

plication for reinstatement of a lapsed life insurance policy. The suit was defended on the theory that applicant had made false statements as to her physical condition in the application for reinstatement; that applicant knew such statements to be false; that if the same were not known to be false at the time of making them, applicant ascertained such facts before the acceptance of the application and it thereupon became applicant's duty to inform the company of the condition.

The jury found that insured at the time of making the application for reinstatement was suffering with an ailment, injury or complaint; that she was not aware of such fact; that after being advised by the doctor of her condition she did not conceal such facts from the company for the fraudulent purpose of securing reinstatement of the policy.

On appeal the insurance company contended that insured, having signed an application for reinstatement of the policy in which the statement was made that she had not, since the policy was issued and delivered and did not then have, any disease, ailment or injury or complaint of any kind, and it appearing that such statement was not true, appellant would not be liable, even though the insured did not know at the time of making the statement that she had any disease, ailment, injury or complaint; and that insured, having been informed subsequent to the making of such statements of her condition, was guilty of fraud upon appellant in not passing such information on to it and therefore was not entitled to recover. The El Paso Court of Civil Appeals, passing upon the company's contention, quoted from the case of National Life & Accident Insurance Co. v. Kinney, 282 S. W. 633-634:

"The rule may indeed be regarded as well established that to avoid a policy on the ground of misrepresentation it must be made willfully and with intent to deceive, must have been material, and relied on by the insured."

See also Gorman v. Jefferson Standard Life Insurance Co., 275 S. W. 248; American Central Life Insurance Co. v. Alexander, (Com. App.) 56 S. W. (2d) 864.

The company made no insistence in the Newell case that the insurance statute did not apply to representations contained in an application for reinstatement of a life insurance policy. This Court, by the refusal of the writ of error, approved the rules of law quoted above, and under such rules the present suit must be determined. In Alexander's case, cited by the El Paso court, Mr. Justice Sharp, then of the Commission of Appeals, speaking for the court, said:

"It is a settled rule in this state that a false statement to avoid a policy must have been willful and made with a design to deceive or defraud."

We are unable to find a case in this State in which a different rule has been applied to "misrepresentations" under the statutes mentioned or before such statutes were enacted.

It is asserted by the insurance company that even though the statute mentioned is applicable to representations contained in an application for reinstatement, the above stated rules are not justified under such a statute. It is enough to say that the construction as given by the El Paso Court of Civil Appeals in the Newell case and the authorities there cited, including the Alexander case by the Commission of Appeals, together with the approval by the Supreme Court of the Newell case as before mentioned, render unnecessary a reexamination of the question now.

Courts of other jurisdictions are not in accord on the questions under discussion. Many decisions are to the effect that where untrue answers are given as to material matters the policy may be avoided without regard to whether insured knew or should have known that the answers were not true. Germania Life Insurance Company of New York v. Klein, 25 Col. App., 326, 137 Pac. 73; Aetna Life Insurance Co. v. Moore, 231 U. S. 543, 58 L. Ed. 356.

Courts of other jurisdictions have held that before the defense of misrepresentations of material facts may be maintained, it is necessary, not only to prove that the representations were false, but also that they were made with intent to deceive or defraud. Moulor v. American Life Insurance Co., 111 U. S. 335, 28 L. Ed. 447; Livingood v. New York Life Insurance Co., 287 Pa. 128, 134 Atl. 474; Shapiro v. Metropolitan Life Insurance Co., 110 N. J. Eq. 287, 159 Atl. 680; Monahan v. Mutual Life Insurance Co., 192 Wis. 102, 212 N. W. 269; Chadwick v. Beneficial Life Insurance Co., 54 Utah 443, 181 Pac. 448. See also Zolintakis v. Equitable Life Assur. Society of the United States, 108 Fed. (2d) 902, by the Circuit Court of Appeals, Tenth Circuit. By the refusal of the writ of error in the Newell case, the Supreme Court of Texas is committed to the doctrine in the last line of authorities mentioned. The contentions made by the insurance company to the contrary must be overruled.

■ Through a number of assignments of error, the insurance company attacked the findings of the jury as being without

support in the evidence. These assignments were by implication overruled by the Court of Civil Appeals and as they present questions of law we have examined each of them here. The insurance company offered in evidence the application for reinstatement, which showed the answers of the applicant. They also offered as a witness a doctor who testified from his records that he made a clinical examination of the applicant on or about March 4, 1935, and advised her that she had the disease and should be treated. The applicant's family doctor testified to treating her for the disease from May until August of 1935, but he did not tell her that she had the disease. Two of the doctors testified that one could have the disease for forty years and never know it. The beneficiary named in the policy called a number of lay witnesses who testified that the insured appeared to be in good health and was jovial. In order to sustain these assignments it must be said as a matter of law that the applicant knew at the time of giving her answers to the inquiries propounded to her that she was afflicted with the disease or had been so afflicted during the year 1935 and fraudulently concealed such facts from the company in giving her answers. We are unwilling to say as a matter of law that at the time of giving the answers the applicant knew that she had, at such time or before, the disease in question. Moreover, we are unable to say as a matter of law that she fraudulently concealed such fact from the insurance company. Under the evidence it was the jury's province to decide these issues and we are unable to say there was no evidence to support the jury's findings.

It follows from what we have said that the judgment of the Court of Civil Appeals, which reversed the judgment of the trial court and rendered judgment for the amount of the policy in favor of the beneficiary named therein, is correct and is therefore affirmed.

Opinion adopted by the Supreme Court February 5, 1941.

Rehearing overruled May 28, 1941.