TRINITY RESERVE LIFE INS. CO.,
Appellant,

v.

Rebecca Ann HICKS et vir, Appellees.

No. 15155.

Court of Civil Appeals of Texas. Dallas.

Oct. 12, 1956.

Rehearing Denied Jan. 11, 1957.

J. Manuel Hoppenstein and Marvin Lewis, Dallas, for appellant.

Mullinax & Wells, Otto B. Mullinax, Dallas, for appellees.

## DIXON, Chief Justice.

Trinity Reserve Life Insurance Company, appellant, filed suit for cancellation of a policy of hospital insurance issued to Rebecca Ann Hicks, appellee.

Appellant alleged fraud in that the insured had represented that at the time she applied for her insurance, May 4, 1953, she was in good health and had not been treated by a physician within the last three years except by Dr. Harvill for a head cold; whereas, in truth, insured at the time of her application was being treated for an infection of the nose, throat and ear, and from February 10, 1953 through March 16, 1953 she had been hospitalized for severe respiratory infection and involvement of the lungs. Appellant further alleged that appellee had misrepresented the facts when she stated in her application that she had not ever had certain enumerated diseases. The policy was issued May 14, 1953. The suit for cancellation was filed January 14, 1955.

Appellee responded with an answer and cross-action. In her cross-action she alleged that on August 16, 1954 she was in an automobile wreck in Portland, Oregon in which she sustained injuries, to her collarbone, a broken left knee, and extensive bruises to her body necessitating her hospitalization and the incurring of hospital, medical, surgical, and ambulance expenses totaling $997.90 in Portland. She further alleged expenses incurred after her return to Dallas of $25 because of her injuries. She sued for a total of $1,022.90 expenses, plus $122.75 penalty as provided by art. 3.62, Insurance Code, V.A.T.S., and attorney's fees of $1,000.

Trial was had to a jury which returned a verdict finding in substance that: (1) Appellee was not asked the question appearing in her application whether she was then in good health and free from physical or mental defects; (2) appellee was not asked whether she had had medical or surgical advice or any treatment, illness or injury within the past three years; (3) she was not asked whether, and had not made representation as to whether, she had ever had certain enumerated diseases; (4) a reasonable attorney's fee was $750. The parties had stipulated that if appellant was not entitled to cancellation of the policy, appellant would owe to appellee under its contract of insurance the sum of $983.90. Based on the jury verdict, the undisputed evidence, and the stipulation, judgment was awarded to appellee for $983.90 plus penalty of 12% under art. 3.62, Insurance

Code, V.A.T.S., amounting to $108.06, and attorney's fee in the amount of $750, making a total of $1,841.96.

Appellant presents six points on appeal which may be boiled down to these contentions: (1) The court should have sustained appellant's motion for judgment notwithstanding the verdict because appellee failed to prove her cause of action, the jury's verdict being contrary to the great weight of the evidence; (2) the court should not have conditionally submitted certain issues; (3) a remittitur should have been required because an attorney's fee of $750 in a $983.90 suit is "excessive, unreasonable and shocks the conscience, and is grossly erroneous"; and (4) the court erred in rendering judgment for statutory penalty and attorney's fees because the undisputed testimony is to the effect that appellant had just cause and acted in good faith in denying the claim of appellee.

As to appellant's first contention as above stated: The record discloses evidence amply supporting the jury's findings. Appellee was 75 years old when she signed the application for insurance. Appellant's own agent who sold the policy to appellee testified that she, appellant's agent, filled out the application for appellee. Her testimony includes the following:

"Q. All right. Now, at the time you visited with Mrs. Hicks and procured that application, state whether or not you read to her questions 3, 4, 5, and 6. Did you ask her those questions? A. Yes, sir, I did.

"Q. *Did you omit any part of the questions when you interrogated her with reference to seeking the answer for the question? A. I did not evade any of the questions. I won't say that I read them, but I did inquire if she had had any of the following,* or told by any doctor she had any of the following. * * *

"Q. Now, at the time you completed the answer to question No. 6 and you put down 'March, '53, head cold,

Harvill,' state whether or not she at that time gave you any other information concerning her visits to doctors that you did not put down on that application? A. I cannot recall exactly what was said. *She did speak of her visits with doctors and things I did ask.* I definitely remember asking for the latest doctor that she had seen. * * *

"Q. Now, then, did you make note of every complaint or symptom that the claimant related or recited that·she might have had or did you have some way of kind of looking for the more serious ones? A. That is right, we didn't—if someone complained they had an eye, ear, nose or throat trouble we would say, 'What kind of eye trouble?' and if they said, 'Well, I wear glasses,' we were interested in that. We wanted to know if they had a cataract or had been to a doctor for treatment of the eye or something like that. A lot of people say, 'I had a head cold'. 'My child has the earache occasionally'. And I would ask, 'Did you take him to a doctor?' And they would say, 'No, just put something in it'. If she didn't take him to the doctor we didn't put down anything on it then. * * *

"Q. You did ask her if she was in good health at the time that she agreed to buy the policy? A. I asked that question, and if I can recall, I put it to her, 'You are in good health now, without any physical or mental defects or deformity?' And if I recall, she kind of laughed and said, 'Well, I don't know about my mental case or attitude,' something like that. I remember it was a very jolly little visit that we had.

"Q. Uh-huh. All right. Now, then, of course, I suppose you, yourself, looked at your applicants and made some kind of estimate as to their general well-being yourself, did you not? A. Naturally.

*"Q. Did you see anything about Mrs. Hicks' conduct or her demeanor or appearance or the way she handled herself that indicated she was not in good health? A. No. For her age I was really shocked at her age when she told me, because she was such a spry little lady.*

"Q. All right. Now, then, I believe you said you were careful to inquire of Mrs. Hicks as to the last doctor she had been to or the most recent medical consultation? A. Yes, sir.

"Q. You put that down here and she told you Dr. Harvill? A. Yes, sir.

\* \* \*

*"Q. And you say she spoke of visits to other doctors but those were earlier in point of time? A. Yes, sir.*

*"Q. All right. You didn't put those down? A. No, sir. I didn't feel that it would be necessary to go back with all of them. I thought the latest doctor's visit would have more information."* (Emphasis supplied.)

Appellee herself testified that when she signed the application she did not have any of the enumerated diseases, had not had them since signing the application, and did not have them at the time of the trial, so far as she knew; that the agent did not ask her many questions when filling out her application; that she did not answer any question falsely, nor did she at any time intend to deceive the insurance company.

■ Believing that the evidence is sufficient to support the jury's findings, we overrule points 1, 2, and 3.

■ We see no error in the conditional submission of issues inquiring whether the answers of appellee in her application as to her prior illnesses and treatment by doctors were material to the risk. Art. 21.16, Insurance Code, V.A.T.S.[1] The court submitted several series of issues, each series pertaining to one of the questions set out in the printed application form. The first issue in each series inquired whether the particular question had been asked, or whether appellee had made misrepresentations about it. Subsequent issues in each series were predicated on the jury's answer to the first or prior issue in the series. The jury was instructed not to answer the other issues in each series, including the issue in re material risk, if their answer was "No" to the first or a prior issue in each series. This was a proper submission. And since the jury's answers to the first or a prior issue in each series was either that appellee had not been asked the particular question, or had not made misrepresentations in answering it, the jury properly did not answer subsequent issues, including issues as to material risk.

■ Moreover, we find no evidence in the record which would uphold a finding that the alleged misrepresentations, if made, were material to the risk. Appellee, whose residence is in Dallas, Texas, was in an automobile accident while on a visit in Portland, Oregon. She sustained an injured collarbone, a broken knee, a cut leg and bruises. We do not find evidence of any connection between such injuries and any prior illnesses she may have had, such as were enumerated in the application form

---

1. Art. 21.16, Ins.Code, V.A.T.S., is as follows:

"Any provision in any contract or policy of insurance issued or contracted for in this State which provides that the answers or statements made in the application for such contract or in the contract of insurance, if untrue or false, shall render the contract or policy void or voidable, shall be of no effect, and shall not constitute any defense to any suit brought upon such contract, unless it be shown upon the trial thereof that the matter or thing misrepresented was material to the risk or actually contributed to the contingency or event on which said policy became due and payable, and whether it was material and so contributed in any case shall be a question of fact to be determined by the court or jury trying such case. Acts 1951, 52nd Leg., ch. 491."

which appellee signed. Appellant's point No. 4 is overruled.

■ At first glance an attorney's fee of $750 in a suit for $983.90 may seem excessive. But a careful study of the record has convinced us to the contrary, and that there is no basis for us to require a remittitur. Appellee made claim under her policy in November 1954. Appellant was aware that appellee's claim was for injuries received in an automobile wreck, not for illness. But appellee was informed that her claim was denied and her policy cancelled. Then suit was brought for cancellation based on alleged misrepresentations in her application as to prior illnesses. Nevertheless, appellant on May 23, 1955 wrote appellee trying to induce her to pay premiums and reinstate the policy. The trial itself lasted three days, up to the time the case was submitted to the jury. Then followed motions for judgment non obstante veredicto and for judgment. Both the proceedings in the trial court and the appeal before this Court have been vigorously contested. In the light of all the circumstances we cannot say that the attorney's fee of $750 is "excessive, unreasonable and shocks the conscience, and is grossly erroneous." Nor can we say, viewing the record as a whole, that there is no basis for assessing the statutory penalty of 12% as provided by art. 3.62, Insurance Code, V.A.T.S. Appellant's points Nos. 5 and 6 are overruled.

The judgment of the trial court is affirmed.

### On Rehearing.

On rehearing appellant calls our attention to the wording of art. 21.16 Insurance Code, which provides that misrepresentations in an insurance application shall not be a defense in a suit on the policy unless "the matter or thing misrepresented was material to the risk *or* actually contributed to the contingency or event on which said policy became due and payable * * *." (Emphasis supplied.)

Appellant contends that the use of the disjunctive word "or" shows that it was intended that the insurer might obtain cancellation of the policy by proving either (1) that the misrepresentations were material to the risk, or (2) that the misrepresentations actually contributed to the contingency upon which the policy became payable, but that it was not intended that the insurer must prove both.

Appellant says that the phrase "material to the risk" refers to such a representation as would induce the insurance company to decline the insurance altogether or demand the payment of a higher premium; and that the thing represented, to be material to the risk, need not have any causal connection with the contingency or event upon which the policy became due and payable.

■ Appellant's view finds support in some of the authorities: Gorman v. Jefferson Standard Life Ins. Co., Tex.Civ. App., 275 S.W. 248; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 48 S. Ct. 512, 72 L.Ed. 895; New York Life Ins. Co. v. Kuhlenschmidt, 218 Ind. 404, 33 N.E.2d 340, 135 A.L.R. 397. However there are cases to the contrary: National Life & Accident Co. v. Dickinson, Tex. Civ.App., 115 S.W.2d 1180; Southern Surety Co. v. Butler, Tex.Civ.App., 247 S.W. 611; Pacific Mutual Life Ins. Co. v. Johnson, 5 Cir., 74 F.2d 367. We think also that the concluding provision of the statute is unfavorable to appellant's view: "* * * and whether it was material and so contributed in any case shall be a question of fact * * *." It will be observed that in the above quoted concluding provision of the statute the conjunctive word "and" is used, and that the fact issue to be determined is referred to in the singular number, not in the plural number. We find ourselves unable to accept appellant's contention, but we shall not belabor the question further for the reason that as we see it, even if the law is as appellant con-

tends, it cannot be applied under the facts disclosed by the record before us.

 In this case the jury found in substance that appellee did not make the misrepresentations in question, and in our opinion the evidence amply sustains such findings. Appellee was a woman 75 years of age. Appellant's agent who sold appellee the policy filled out the application for her. Appellee told her of earlier visits to doctors, but appellant's agent brushed these answers aside as immaterial. She, the agent, considered only appellee's last visit to a doctor as important. Moreover months later, after appellee had suffered her collision injuries and after appellant had obtained full knowledge of appellee's prior illnesses, appellant wrote a letter to appellee asking her to pay up the premiums on her policy so that it might be reinstated. Under the circumstances we think appellant is in no position to complain that its own agent did not correctly and completely write down appellee's answers to the questions propounded to her. Texas Prudential Ins. Co. v. Beach, Tex.Civ.App., 98 S.W.2d 1057; Inter-Ocean Casualty Co. v. Brown, Tex.Civ.App., 31 S.W.2d 333; 24 Tex.Jur. 923.

.  Appellant cites us to the case of San Angelo Life & Accident Ass'n v. Haynes, Tex.Civ.App., 106 S.W.2d 363, wherein it is held that when there is a collusion between the company's agent and the insured, the company is not bound by the agent's failure to fill in the application correctly. The facts in the cited case are not analogous to the facts here. There is no jury finding of collusion in this case, and in our opinion there is not sufficient evidence to support such a finding if it had been made. An insurer seeking to avoid a policy because of misrepresentation must plead and prove not only that the insured's answers were false, but that insured knew or should have known their falsity and made them willfully and with the intention of inducing the insurer to issue the policy. Clark v. National Life &

Accident Ins. Co., 145 Tex. 575, 200 S.W. 2d 820; Great Southern Life Ins. Co. v. Doyle, 136 Tex. 377, 151 S.W.2d 197. We think that under the record before us appellant has failed to meet the above test or to show collusion.

Appellant's motion for rehearing is overruled.