# Supreme Court of Texas

No. 21-0843

American National Insurance Company,
*Petitioner*,

v.

Bertha Arce, Individually
and as Representative of All Others Similarly Situated,
*Respondent*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

**Argued January 12, 2023**

JUSTICE DEVINE delivered the opinion of the Court.

JUSTICE YOUNG filed a concurring opinion.

For more than a century, Texas courts have applied the settled rule that insurers may not avoid liability under an insurance policy based on a misrepresentation in an insurance application unless, among other things, the insurer pleads and proves the insured intended to deceive or induce the insurer to issue the policy. The primary issue before us is whether the common-law scienter requirement is repugnant to the plain language of section 705.051 of the Texas Insurance Code,

which provides that "[a] misrepresentation in an application for a life, accident, or health insurance policy does not defeat recovery under the policy unless the misrepresentation: (1) is of a material fact; and (2) affects the risks assumed." Section 705.051, which dates back to 1909, has long functioned side by side with the common law, having been reenacted and recodified without substantive change, most recently in 2003.

We hold that section 705.051 does not displace the common-law rule because the statute prescribes necessary, not exclusive or sufficient, conditions for denying recovery under a contestable policy. Finding no compelling reason to otherwise repudiate clear and longstanding precedent, we affirm the court of appeals' judgment in part and remand the case to the trial court. We also reverse the court's judgment in part and render judgment that, as a matter of law, the insurer was exempt from complying with the ninety-day notice provision in section 705.005.

**I**

During a chance encounter with an insurance agent at a motorcycle shop, Sergio Arce, Jr. spontaneously applied for a $25,000 life insurance policy with American National Insurance Co. (ANIC). The application process consisted of ANIC's agent reading questions to Arce from an electronic application form and documenting his responses using a computer tablet. Arce disclosed some adverse medical history and provided the name and address of his medical provider, but the agent recorded his answers to all other medical-history questions as "no." At the conclusion of the application interview, Arce electronically signed the application form, affirming that his answers were "full,

complete and true to the best of [his] knowledge and belief." By signing, Arce also authorized ANIC to secure his medical records.

One month later, ANIC issued a life insurance policy to Arce but, for undisclosed reasons, declined accidental-death coverage and required payment of an additional premium on delivery. As required by statute, the policy would become incontestable two years after issuance, but in a tragic turn of events, Arce died a mere thirteen days later from injuries sustained in an automobile accident.[1]

Arce's mother, Bertha, submitted a claim under the policy as his designated beneficiary, but ANIC denied the claim and refunded the premium. During the claims-investigation process, ANIC reviewed Arce's medical records and determined that he had incorrectly answered "no" to an application question inquiring about diagnoses, treatment, or medical advice for "any disease or abnormality of the stomach, intestines, rectum, pancreas, or liver, including cirrhosis, hepatitis and colitis." In refusing to pay the claim, ANIC informed Bertha that it would not have issued the policy if the application questions had been answered correctly.

Bertha sued ANIC for policy benefits, statutory penalties, and attorney's fees, alleging breach of contract and related violations of the Texas Insurance Code. ANIC answered and moved for summary judgment on the contract and statutory claims. The following week, Bertha amended her petition to add class claims and a new Insurance

---

[1] The incontestability provision in Arce's insurance policy states: "This Policy will be incontestable after it has been in force during the Insured's lifetime for 2 years from the Issue Date except for nonpayment of premium." *See* TEX. INS. CODE § 1101.006 (mandating the inclusion of a policy provision with this exact language).

Code claim. ANIC never amended or supplemented its motion to address the amended petition

In a traditional summary-judgment motion limited to the claims in Bertha's previous filing, ANIC argued that the breach-of-contract and statutory claims were fatally infirm because ANIC was entitled to rescind the policy. Relying principally on Insurance Code section 705.051, ANIC claimed that no benefits were due under the policy because, as a matter of law, (1) Arce's insurance application included material misstatements of fact that affected the risks ANIC assumed in issuing the policy and (2) the Insurance Code does not require insurers seeking rescission of a life insurance policy during the contestability period to prove misstatements were made with intent to deceive or induce the insurer to issue the policy.[2]

ANIC acknowledged the common-law rule requiring proof of intent to deceive but argued that the scienter requirement was incompatible with section 705.051's plain language following its recodification in 2003. Under ANIC's view of the statute, an insurer could avoid an obligation to pay on an insurance policy based on an innocent, unknowing, or careless misstatement in an insurance application, so long as the misstatement was of a material fact and either induced the policy's issuance or affected the premium charged.

---

[2] *Compare id.* § 705.051 (precluding an insurer from denying recovery under the policy based on a misrepresentation that is not "a material fact" and does not "affect[] the risks assumed"), *with id.* § 705.104 (precluding a defense based on misrepresentation in an insurance application asserted in a suit on the policy more than two years after the policy's issuance unless notice of rescission has been given to the insured or the insurer proves the misrepresentation was "material to the risk" and "intentionally made").

ANIC did not take the alternative position that intent to deceive was conclusively established. However, it argued that even if proof of intent is required to avoid paying on the policy, Bertha's claims under Insurance Code sections 541.060 and 541.061 would still fail because ANIC denied Bertha's claim based on a "bona fide" and "good faith" dispute about the continued vitality of the common-law rule.

Bertha's summary-judgment response, filed months later, joined issue on the necessity of pleading and proving intent to deceive before an insurer may decline to pay benefits based on a misrepresentation in the insurance application. She argued that section 705.051's language does not conflict with the common law and noted that the two have coexisted for more than a hundred years without any substantive modification to the statute.

Bertha further asserted that ANIC had forfeited any misrepresentation defense by failing to timely notify her about its intent to rescind the policy, as required by section 705.005 of the Insurance Code.[3] That notice requirement is inapplicable to life insurance policies with a statutorily compliant incontestability clause, like the one in Arce's policy, but only if premiums have been "duly paid."[4] Bertha argued that ANIC was not exempt from providing notice because the

[3] *See id.* § 705.005 (prohibiting an insurer from relying on an insured's misrepresentation in an insurance application as a defense to coverage absent proof at trial that, before the 91st day after discovering the misrepresentation, the insurer gave notice to an insured or a deceased insured's beneficiary that it refused to be bound).

[4] *See id.* § 705.105 ("Subchapter A [which includes section 705.005] does not apply to a life insurance policy: (1) that contains a provision making the policy incontestable after two years or less; and (2) on which premiums have been duly paid.").

summary-judgment evidence did not establish that the additional premium due on delivery had, in fact, been paid. ANIC refuted the assertion, pointing to affidavit testimony confirming the insurer's receipt of all premiums due and payable. Although Bertha had lodged myriad objections to that affidavit, ANIC stated the obvious: if the additional premium had not actually been paid, Bertha's claims would fail due to nonpayment of the initial premium or lapse of the policy.

The trial court granted ANIC's motion and rendered a final take-nothing judgment rescinding Arce's life insurance policy. No grounds were stated. On motion for rehearing, which was denied, the trial court expressly overruled Bertha's objections to ANIC's summary-judgment evidence.

The court of appeals affirmed the trial court's ruling on Bertha's objections, but otherwise reversed and remanded.[5] After rejecting ANIC's argument that the common-law scienter requirement did not survive section 705.051's recodification, the court held that ANIC could not avoid its contractual obligation without pleading and proving that Arce intended to deceive ANIC.[6] Measured against that standard, the court held that summary judgment was not proper on the breach-of-contract claim because: (1) intent often involves fact questions; (2) ANIC's evidence did not conclusively establish intent; (3) mere knowledge of a health condition does not conclusively establish intent to deceive; and (4) "[t]he undisputed summary judgment evidence shows [ANIC] asserted rescission well beyond the ninety-day period set

[5] 633 S.W.3d 228, 230 (Tex. App.—Amarillo 2021).

[6] *Id.* at 234-36.

in section 705.005 of the Code."[7] The court also reversed summary judgment on the related Insurance Code violations, which alleged wrongful denial of policy benefits.[8] Finally, the court reversed summary judgment on the class claims because ANIC did not move for summary judgment on those claims or address them in any way.[9]

## II

ANIC's petition for review presents three issues: (1) whether section 705.051 grants insurers a misrepresentation defense without proof of intent, as required under the common law; (2) whether the court of appeals erred in failing to hold section 705.005's notice requirement inapplicable as a matter of law; and (3) whether the court of appeals erred in reversing summary judgment on Arce's Insurance Code and class claims because it had no contractual obligation to pay policy benefits.[10]

We granted ANIC's petition to resolve an incipient conflict between Texas state cases, which consistently apply the common-law rule, and a handful of federal district court cases that have recently departed from it.[11] But before beginning our analysis of that issue, we

---

[7] *Id.* at 234-37.

[8] *Id.* at 237-38.

[9] *Id.* at 238.

[10] Amicus briefs supporting ANIC's construction of the statute were submitted by Texas Association of Life & Health Insurers; The American Council of Life Insurers; RSUI Group, Inc.; and Andrew Whitaker, Esq.

[11] *See generally Brown v. Bankers Life & Cas. Co.*, No. H-20-136, 2021 WL 2325448 (S.D. Tex. Mar. 30, 2021); *Guzman v. Allstate Assurance Co.*, No. 2:19-CV-187-BR, 2020 WL 7868100 (N.D. Tex. Dec. 3, 2020), *rev'd on other grounds*, 18 F.4th 157 (5th Cir. 2021); *Landeros v. Transamerica Life Ins. Co.*,

address, as a preliminary matter, the effect of the 2003 nonsubstantive recodification of the Insurance Code.

In the courts below, ANIC argued that the 2003 recodification rendered the common-law intent requirement inoperative because the Legislature substantively changed section 705.051. There, as here, ANIC leaned heavily on two cases: (1) *Fleming Foods v. Rylander*, in which we held that when the language adopted in a recodification substantively changes the meaning of a statute, courts must consider the prior law repealed and apply the current law according to its plain language even if the Legislature stated no substantive change was intended;[12] and (2) *Colonial Penn Life Insurance Co. v. Parker*, in which a federal district court treated section 705.051 as having been "amended" and, on that basis, applied a presumption that the Legislature intended to make a substantive change to the statute.[13] Neither is an accurate description of the 2003 recodification of section 705.051.

Having lost on that argument in the court of appeals, ANIC changed tack in this Court, asserting that section 705.051's plain and unambiguous language—now and since its original enactment in 1909—provides insurers a misrepresentation defense on the terms stated therein and allows no other limitations. In clarifying its argument in

---

No. 7:17-CV-00475, 2020 WL 3107795 (S.D. Tex. May 8, 2020); *Colonial Penn Life Ins. Co. v. Parker*, 362 F. Supp. 3d 380 (S.D. Tex. 2019).

[12] 6 S.W.3d 278, 284 (Tex. 1999). ANIC has also extensively cited and discussed *State Farm Life Insurance Co. v. Martinez*, in which we held courts could no longer apply a common-law rule following substantial changes to a recodified law. 216 S.W.3d 799, 800, 803-04 (Tex. 2007).

[13] 362 F. Supp. 3d 380, 399-402 (S.D. Tex. 2019).

this Court, ANIC now acknowledges—quite correctly—that the Legislature not only declared that the 2003 recodification was nonsubstantive, it also left section 705.051's language materially unchanged.[14] Accordingly, we do not consider the prior law repealed.

---

[14] *Compare* TEX. INS. CODE § 705.051 ("A misrepresentation in an application for a life, accident, or health insurance policy does not defeat recovery under the policy unless the misrepresentation: (1) is of a material fact; and (2) affects the risks assumed."), *with* Act of May 22, 2003, 78th Leg., R.S., ch. 1274, §§ 1, 2, 2003 Tex. Gen. Laws 3611, 3611, 3752, 4138 (repealing former Article 21.18 and recodifying it as section 705.051 in a "nonsubstantive revision of statutes" made effective April 1, 2005), Act of June 7, 1951, 52d Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 1075, 1091-92 (repealing and codifying former Article 5045 as Article 21.18 using identical language and "preserving the substantive law as it existed immediately before the passage of this Act except as to laws affecting the business of insurance passed at the Regular Session of the 52nd Legislature"), TEX. REV. CIV. STAT. art. 5045 (1925) (recompiling and renumbering former Article 4959 using its same language) [adopted at the 39th Leg., R.S.], TEX. REV. CIV. STAT. art. 4959 (1911) (recompiling statutes but retaining numbering and the same language) [adopted at the 32d Leg., R.S.], *and* Act approved Mar. 22, 1909, 31st Leg., R.S., ch. 108, § 68, 1909 Tex. Gen. Laws 192, 215 (enacting former TEX. REV. CIV. STAT. art. 4959, now section 705.051, which said: "No recovery upon any life, accident or health insurance policy shall ever be defeated because of any misrepresentation in the application which is of an immaterial fact and which does not affect the risks assumed."); *see also Researching Texas Law: Constitution & Statutes*, TEX. A&M SCHOOL OF L., https://law.tamu.libguides.com/c.php?g=513877&p=4146200 (providing links to the 1911 and 1925 statutory recompilations with the text of former Article 4959 at page 1037 of the 1911 statute and the text of former Article 5045 at page 1410 of the 1925 statute) (last visited Apr. 25, 2023).

One amicus brief takes the position that the 2003 recodification substantively changed section 705.051 by *not* materially changing its language to expressly *include* an intent-to-deceive element. We cannot endorse this approach to construing the statute in light of authority making prior judicial interpretations applicable to statutes that have not substantively changed and other well-settled principles like the legislative-acceptance doctrine and the presumption that the Legislature acts with full knowledge of (and subject to) extant law. *See In re Ford Motor Co.*, 165 S.W.3d 315, 318 n.1 (Tex. 2005) (applying precedent to the current version of a statute); *Grapevine Excavation,*

This brings us to the main issue on appeal: whether section 705.051 is an exclusive misrepresentation defense that effectively renders the common-law rule a dead letter.

## III

"[A]n insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed."[15] Insurance policies are construed as contracts and enforced as contracts.[16] Under our precedent, an insurer cannot avoid contractual liability based on a misrepresentation in an application for any type of insurance without pleading and proving: (1) the making of the representation; (2) falsity of the representation; (3) reliance by the insurer; (4) the intent to deceive on the part of the insured in making the same; and (5) the materiality of the representation.[17] The requirement of intent to deceive is well settled, longstanding, and clearly

---

*Inc. v. Md. Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000) (discussing the legislative-acceptance doctrine); *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 940 n.5 (Tex. 1993) (observing that the Legislature was presumed to be aware of this Court's precedent in enacting and amending a statute).

[15] *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (internal quotation marks omitted).

[16] *Id.*; *see Anadarko Petroleum Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192-93 (Tex. 2019); *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 118-19 (Tex. 2015).

[17] *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980) (collecting cases and articulating the elements of the common-law misrepresentation defense); *see Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 282 (Tex. 1994) (plurality op.) (stating that the *Mayes* elements apply to all types of insurance contracts); *id.* at 284-85 (Phillips, C.J., concurring) (agreeing that intent to deceive is required); *id.* at 286 (Cornyn, J., concurring and dissenting) (joining the concurring opinion as to the requirement of intent).

articulated.[18] But even though our body of law has operated in harmony with section 705.051 since its original enactment,[19] ANIC insists that—no matter how entrenched in our jurisprudence—the intent requirement cannot be squared with the statutory language and must therefore yield.

Whether ANIC is correct depends on the proper interpretation of the statute, which is a question of law we consider de novo according to

---

[18] *E.g.*, *Union Bankers*, 889 S.W.2d at 282 (plurality op.), 284-85 (Phillips, C.J., concurring), 286 (Cornyn, J., concurring and dissenting) (collectively reflecting the Court's unanimous opinion that proving intent to deceive is necessary to avoid liability based on a misrepresentation in an application for any type of insurance); *Mayes*, 608 S.W.2d at 616 (life insurance); *Washington v. Reliable Life Ins. Co.*, 581 S.W.2d 153, 160 (Tex. 1979) (life insurance); *Allen v. Am. Nat'l Ins. Co.*, 380 S.W.2d 604, 607 (Tex. 1964) (life insurance); *Clark v. Nat'l Life & Accident Ins. Co.*, 200 S.W.2d 820, 822-23 (Tex. 1947) (life insurance); *Great S. Life Ins. Co. v. Doyle*, 151 S.W.2d 197, 201 (Tex. [Comm'n Op.] 1941) (reinstatement application for life insurance); *Colo. Life Co. v. Newell*, 78 S.W.2d 1049, 1051 (Tex. Civ. App.—El Paso 1935, writ ref'd) (life insurance); *Westchester Fire Ins. Co. v. Wagner*, 57 S.W. 876, 878 (Tex. Civ. App. 1900, writ ref'd) (fire insurance proof of loss).

ANIC contends two cases—one of ours and one from the Commission of Appeals—implicitly reject the common-law intent requirement in light of the 1909 Insurance Code enactments. However, no issue of intent was presented in either case. *See generally Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28 (Tex. 1978) (considering whether statutory conditions listed disjunctively are actually conjunctive requirements for rescission and holding that former art. 21.16 [now section 705.004] requires proof of at least one, not both); *Wright v. Fed. Life Ins. Co.*, 248 S.W. 325 (Tex. Comm'n App. [Sec. A] 1923, judgm't adopted) (considering whether the "policy never took effect nor became a binding obligation" of the insurer, and holding that the predecessors to sections 705.051 and 1101.007 "in no way prohibit or invalidate the stipulation [in the insurance application] that the policy sued on should not take effect unless the insured was [actually] in good health at the time it was delivered"). Neither case holds that intent is not required to rescind an insurance policy based on a misrepresentation in an insurance application, but even if they could be so construed, the great weight of our precedent is to the contrary. In making this observation, we express no opinion as to whether these cases were otherwise correctly decided or whether their analytical viability endures.

[19] *See supra* notes 14 & 18.

established principles.[20] As always, our primary objective is to give effect to the Legislature's intent as manifested in the enacted language, which we apply according to its plain and grammatical meaning unless doing so would produce absurd results or a different meaning is contextually apparent.[21] While "we must never 'rewrite [a] statute under the guise of interpreting it,'"[22] the issue here is not whether the common law alters the statutory language but whether the Legislature's enacted language expressly or effectively forecloses the common law. It goes without saying that statutes can modify or displace common-law rules, but to resolve the instant dispute, we must ascertain whether section 705.051 actually does so.

**A**

Section 705.051 is in Chapter 705 of the Insurance Code's "Consumer Protection" title, which governs misrepresentations by policyholders in applying for insurance or filing a proof of loss. The chapter is divided into three subchapters.[23]

Subchapter A is composed of sections 705.001 to 705.005, which apply to all types of insurance policies except (as stated in Subchapter C) life insurance policies with two-year incontestability provisions "on which premiums have been duly paid."[24] Sections 705.003 and 705.004 govern enforcement of insurance policy provisions addressing,

---

[20] *Colorado County v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017).

[21] *Id.*

[22] *Id.* (quoting *In re Ford Motor Co.*, 442 S.W.3d 265, 284 (Tex. 2014)).

[23] TEX. INS. CODE §§ 705.001–.105.

[24] *Id.* § 705.105 (exempting certain life insurance policies from Subchapter A).

respectively, misrepresentations in proofs of loss and misrepresentations in insurance applications. As a precondition to invoking a misrepresentation defense at trial, section 705.005 requires the insurer to give an insured or a deceased insured's beneficiary notice of the insurer's intent to rescind within ninety days after discovering a misrepresentation in an insurance application.

Subchapter B contains a single "special" provision, section 705.051, that applies only to misrepresentations in applications for life, accident, and health insurance. Subchapter C provides additional special provisions—sections 705.101 to 705.105—that apply only to life insurance policies. If premiums have been "duly paid," Subchapter C effectively exempts all life insurance policies from Subchapter A, including the notice requirement, because all life insurance policies are required to include a two-year incontestability clause.[25]

The principal provision at issue here, section 705.051, provides:

> § 705.051. Immaterial Misrepresentation in Life, Accident, or Health Insurance Application
>
> A misrepresentation in an application for a life, accident, or health insurance policy does not defeat recovery under the policy unless the misrepresentation:

[25] *See id.* §§ 705.105, 1101.006. Section 705.105's phrasing is a curiosity because it suggests that a life insurer that has *not* been duly paid would be subject to section 705.005's ninety-day notice requirement while one who *has* been duly paid would be *excused* from providing the required notice. Why that would be the case is not immediately apparent, but presumably, nonpayment of premiums would carry other consequences distinct from the effect of any misrepresentation in the insurance application.

(1) is of a material fact; and

(2) affects the risks assumed.[26]

ANIC views this provision as effectively encompassing all the common-law rescission elements, except intent to deceive,[27] and as establishing an insurer's right to rescind if both statutorily stated conditions are satisfied. We disagree with ANIC's preferred reading of the statute and hold that section 705.051 is not discordant with the common law, either expressly or by necessary implication.

Both the statutory and the common-law elements govern an insurer's misrepresentation defense because, grammatically, section 705.051 states conditions that are necessary, not sufficient, to defeat recovery. Conditions that are sufficient *guarantee* a result, while conditions that are merely necessary do not. Take for example the statement: "My car does not function unless it has gas and motor oil." Gas and motor oil are necessary, but not sufficient, for my car to function. Though not expressly stated, the law of mechanics also precludes my car from functioning unless it has an engine, tires, and a key.

As written, section 705.051 does not guarantee that the insurer can "defeat recovery under the policy" if both of the stated conditions are

---

[26] *Id.* § 705.051.

[27] Although reliance is not expressly stated, ANIC admits it is inherent in the materiality and risks-assumed conditions. The parties disagree about whether the term "misrepresentation" inherently connotes some knowledge of the true facts, and thus some intent to deceive, and whether the term can encompass even innocent falsehoods. Our construction of section 705.051 renders these disputes immaterial.

satisfied; it only guarantees that recovery *cannot* be defeated if one or the other is not. Consistent with its status as a consumer-protection statute, section 705.051 *sets a floor* that cannot be avoided by contract or under the common law, but it does not purport to grant insurers a rescission defense *at all*, let alone on exclusive terms.

ANIC's contrary construction works only if the statute is rewritten to change "does not defeat" to "does defeat" and "unless" to "if". We might consider ANIC's point well taken if that were what the statute actually said, but it does not. Even taking "unless" to mean "except if", as ANIC urged in post-submission briefing, does not alter the plain meaning of section 705.051 as establishing minimum conditions that do not guarantee denial of recovery. So construed, the statute does not inherently or necessarily conflict with settled law requiring pleading and proof of intent to deceive *in addition to* the statutorily mandated conditions.

ANIC argues we must conclude differently because the Legislature knows how to impose an intent requirement and conspicuously did so in section 705.104, which applies (1) only to applications for life insurance policies and (2) only to a misrepresentation defense raised once a life insurance policy is incontestable.[28] Similar to section 705.051, section 705.104 constrains

---

[28] Two federal district courts employing different rationales recently held that the 2003 recodification effected a substantive change to section 705.104. *See Pruco Life Ins. Co. v. Villareal*, No. H-17-2795, 2021 WL 4155250, at *12 (S.D. Tex. Sept. 13, 2021); *Landeros v. Transamerica Life Ins. Co.*, No. 77-CV-00475, 2020 WL 3107795, at *6-7 (S.D. Tex. May 8, 2020). Both courts concluded that the 2003 recodification effectively reanimated section 705.104's plain language, which both courts said had been rendered essentially superfluous by a 1909 legislative enactment that produced a

an insurer's ability to avoid an insurance obligation based on a misrepresentation in an insurance application, but the minimum conditions the statute imposes are different:

> <u>§ 705.104. Misrepresentation in Application for Life Insurance</u>
>
> A defense based on a misrepresentation in the application for, or in obtaining, a life insurance policy on the life of a

---

conflict with language in section 705.104's predecessor. The conflicting enactment was said to be the requirement—in section 1101.006 and its predecessor—that an insurance-policy provision contain an incontestability clause stating the policy is incontestable after two years "except for nonpayment of premium."

Although section 1101.006 is still on the books, the district court in *Landeros* concluded that section 705.104 was revived because it was recodified in 2003—two years after the ostensibly conflicting statute had been recodified—and the sequence of recodification events worked to amend section 1101.006 to encompass the additional grounds for contract avoidance beyond a contestability period in section 705.104. 2020 WL 3107795, at *6-7. The district court in *Pruco*, on the other hand, concluded that the 2003 recodification substantively altered section 705.104 by reorganizing it and altering its language. 2021 WL 4155250, at *12. Both cases said that, despite section 705.104's plain language, this Court had held that its predecessor had become inoperative as to policies issued after 1909, but in light of the 2003 recodification, section 705.104 may now be enforced according to its plain language. *Pruco*, 2021 WL 4155250, at *12 (citing *Patton v. Am. Home Mut. Life Ins. Co.*, 185 S.W.2d 420, 422 (Tex. 1945), as approving the analysis in *Am. Nat'l Ins. Co. v. Welsh*, 22 S.W.2d 1063, 1064 (Tex. Comm'n App. 1930, judgm't adopted)); *Landeros*, 2020 WL 3107795, at *6-7 (citing *Am. Nat'l Ins. Co. v. Tabor*, 230 S.W. 397, 399 (Tex. 1921)).

We express no opinion as to whether either *Pruco* or *Landeros* was correctly decided on that issue, which is not presented here. For purposes of our analysis, the Legislature either rendered section 705.104 superfluous in 1909, so it has no bearing on section 705.051's meaning, or the Legislature intended it to be effective according to its plain language. We need not consider whether section 705.104 has been substantively altered in word or legal effect because that provision is relevant to the analysis here only to the extent its plain language informs section 705.051's proper construction, and for purposes of addressing ANIC's arguments on appeal, we assume that it does.

> person in or residing in this state is not valid or enforceable in a suit brought on the policy on or after the second anniversary of the date of issuance of the policy if premiums due on the policy during the two years have been paid to and received by the insurer, unless:
>
> (1) the insurer has notified the insured of the insurer's intention to rescind the policy because of the misrepresentation; or
>
> (2) it is shown at the trial that the misrepresentation was:
>
> > (A) material to the risk; and
> >
> > (B) *intentionally made*.[29]

ANIC contends that the intent element in section 705.104 would serve no purpose unless section 705.051 is construed as excluding intent as a prerequisite to denying benefits. Federal district courts have been persuaded by this argument and, notwithstanding clear precedent from this Court, have held that intent cannot be required to avoid liability on a contestable insurance policy[30] (or by necessary implication, health and accident policies, which are also governed by section 705.051 but not section 705.104). For at least two reasons, we do not regard section 705.104's language as carrying the same interpretive import.

---

[29] Emphasis added.

[30] *See Colonial Penn Life Ins. Co. v. Parker*, 362 F. Supp. 3d 380, 402-03 (S.D. Tex. 2019); *see also Brown v. Bankers Life & Cas. Co.*, No. H-20-136, 2021 WL 2325448, at *3 (S.D. Tex. Mar. 30, 2021) (following *Colonial Penn*); *Guzman v. Allstate Assurance Co.*, No. 2:19-CV-187-BR, 2020 WL 7868100, at *4-6 (N.D. Tex. Dec. 3, 2020) (same), *rev'd on other grounds*, 18 F.4th 157 (5th Cir. 2021); *Landeros v. Transamerica Life Ins. Co.*, No. 77-CV-00475, 2020 WL 3107795, *7-8 (S.D. Tex. May 8, 2020) (same).

First, making intent a statutory requisite to rescission when a life insurance policy is otherwise incontestable is not inconsistent with leaving it to the common law to impose an intent condition, or not, for other types of policies (like accident or health insurance) or before a life insurance policy is incontestable. Section 705.104 simply sets a different statutory floor for a materially different situation.

Second, a review of the common law when section 705.104's predecessor, former Article 3096eee,[31] was enacted in 1903 suggests that intent may have been expressly stated in that provision because, before the statutory enactment, a life insurance policy that became incontestable could only be canceled for a reason specifically stated in the policy, which was strictly construed to avoid a forfeiture.[32] By

---

[31] Act of March 27, 1903, 28th Leg., R.S., ch. 69, 1903 Tex. Gen. Laws 94-95, *recompiled and renumbered as* TEX. REV. CIV. STAT. art. 4951 (1911), *recompiled and renumbered as* TEX. REV. CIV. STAT. art. 5049 (1925), *repealed and replaced by* Act of June 7, 1951, 52d Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 1084-85, 1092 (adopting former art. 21.35 without changes), *repealed and replaced by* Act of May 20, 2003, 78th Leg., R.S., ch. 1274, § 2, 2003 Tex. Gen. Laws 3611, 3753-54, 4138-39 (adopting current TEX. INS. CODE § 705.104 as part of a nonsubstantive recodification effective April 1, 2005); *see Researching Texas Law: Constitution & Statutes*, TEX. A&M SCHOOL OF L., https://law.tamu.libguides.com/c.php?g=513877&p=4146200 (providing links to the 1911 and 1925 statutory recompilations with the text of former Article 4951 at page 1035-36 of the 1911 statute and the text of former Article 5049 at page 1411 of the 1925 statute) (last visited Apr. 25, 2023).

[32] *See Mut. Rsrv. Fund Life Ass'n v. Payne*, 32 S.W. 1063, 1065 (Tex. Civ. App. 1895, no writ) (although the policy excluded coverage for suicide, the court ordered the insurer to pay on the policy because the insured's death "by his own hand" occurred in the incontestability period, so that was no longer a valid defense); *see also Hibernia Ins. Co. v. Bills*, 29 S.W. 1063, 1064 (Tex. 1895) (language in an insurance policy effecting a forfeiture is strictly construed); *Franklin Life Ins. Co. v. Villeneuve*, 68 S.W. 203, 206 (Tex. Civ. App. 1902, writ ref'd) (the insurance policy was incontestable despite a misrepresentation on

changing the standard to permit cancellation if (among other things) the misrepresentation was intentionally made, the Legislature effectively made the standard after incontestability equivalent to the standard Texas followed under the common law during the contestability period.

For either reason, our construction of section 705.051 does not render section 705.104's intent requirement meaningless. If sections 705.051 and 705.104 are enforced according to their plain language, the conditions stated in those provisions would prevent courts and insurance policies from avoiding those minimum requirements for rescission.[33] We therefore hold that more than one hundred years of precedent is not repugnant to or displaced by the equally mature legislative enactment now codified without substantive change as section 705.051.

**B**

ANIC nonetheless urges us to abandon the scienter requirement, bemoaning the common-law rule as a product of "judicial drift" that has placed Texas in the minority.[34] ANIC's proffered reasons are

---

the application); *Franklin Ins. Co. v. Villeneuve*, 60 S.W. 1014, 1015 (Tex. Civ. App. 1901, no writ) (same);.

[33] *See supra* note 28 (discussing cases analyzing whether section 705.104 is enforceable according to its plain language).

[34] *See* Mark C. Dillon, *The Extent to Which "Yellowstone Injunctions" Apply in Favor of Residential Tenants: Who Will See Red, Who Can Earn Green, and Who May Feel Blue?*, 9 CARDOZO PUB. L. POL'Y & ETHICS J. 287, 358 (2011) (defining "judicial drift" as "the unintended expansion of case law by applying one innocuous sentence of a decision to a broader set of circumstances in a later case that was never initially intended or foreseen").

insufficiently compelling to warrant destabilizing a body of jurisprudence that is not in conflict with the statutory scheme.

It is true, as ANIC says, that some of the earliest authority declaring the law "settled" is more conclusory than explanatory,[35] but brevity is not unusual for opinions of the era. Conciseness of the articulated rule makes the law clear and unmistakable, not infirm. ANIC further assumes from precedential pith that the rule was subsequently applied without a critical eye. Maybe so. But by 1941 we had pointedly acknowledged the existence of divergent viewpoints and reconfirmed our commitment to what was already considered to be settled law in Texas.[36] Though Texas may be aligned with a minority of

---

[35] *See, e.g.*, *Westchester Fire Ins. Co. v. Wagner*, 57 S.W. 876, 877 (Tex. Civ. App. 1900, writ ref'd) ("It is the settled rule that false statements, to avoid a policy, must have been willful, and with design to deceive or defraud."); *Colo. Life Co. v. Newell*, 78 S.W.2d 1049, 1051 (Tex. Civ. App.—El Paso 1935, writ ref'd) (life insurance) ("'The rule may indeed be regarded as well established that to avoid a policy on the ground of misrepresentation it must be made willfully and with intent to deceive, must have been material, and relied on by the insured.'" (quoting *Nat'l Life & Accident Ins. Co. v. Kinney*, 282 S.W. 633, 644 (Tex. Civ. App.—Fort Worth 1926, no writ)).

[36] *See Great S. Life Ins. Co. v. Doyle*, 151 S.W.2d 197, 201 (Tex. [Comm'n Op.] 1941) (observing that "[m]any decisions [from other jurisdictions] are to the effect that where untrue answers are given as to material matters[,] the policy may be avoided without regard to whether [the] insured knew or should have known that the answers were not true" while "[c]ourts of other jurisdictions have held that before the defense of misrepresentations of material facts may be maintained, it is necessary, not only to prove that the representations were false, but also that they were made with intent to deceive or defraud" and holding that this Court had already expressed its commitment to the rule reflected in the latter line of cases by refusing the writ in *Colorado Life Insurance Co. v. Newell*, 78 S.W.2d 1049, 1051 (Tex. Civ. App. 1935, writ ref'd), which described the rule as "well established").

jurisdictions in requiring intent to deceive, we are neither newly nor unwittingly so.[37]

We conclude that principles of efficiency, fairness, and legitimacy counsel against unsettling that which has been settled so long and with such clarity. "Adherence to precedent remains the touchstone of a neutral legal system that provides stability and reliability," so "[d]epartures from precedent must be carefully considered and should be rare."[38] But while stare decisis is "not an inexorable command," it has its "greatest force" in areas where the Legislature may rightfully flex its constitutional power, like enactment of the Insurance Code provisions at issue here.[39] In over a hundred years, there has been no indication that the Legislature disagrees with the common-law approach to enforcement of insurance contracts.

Adhering to our precedent, we therefore hold that insurers must plead and prove intent to deceive to avoid contractual liability based on a misrepresentation in an application for life insurance, whether the policy is contestable or not. Proof of a material inaccuracy is not enough. We express no opinion as to whether the record bears legally sufficient evidence of intent because ANIC's summary-judgment motion did not argue that intent was conclusively established.

---

[37] *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 285 (Tex. 1994) (Phillips, C.J., concurring) (noting the Court's awareness that Texas had adopted the minority rule); *see id.* at 282 (plurality op.), 284-85 (Phillips, C.J., concurring), 286 (Cornyn, J., concurring and dissenting) (unanimously embracing the minority rule).

[38] *Mitschke v. Borromeo*, 645 S.W.3d 251, 263 (Tex. 2022).

[39] *Id.* at 260, 265.

### C

We do not reach the third issue—whether ANIC's denial of benefits was proper as a matter of law—because, as presented in this Court, success on that issue is premised on the common-law rule's invalidity. But to the extent ANIC contends Arce's statutory bad-faith claims are not viable based on a bona fide dispute about that matter, we hold that summary judgment is not proper because the record bears some evidence to the contrary.[40] When deposed, ANIC's claims adjuster testified that Bertha's claim was not denied based on a dispute about whether the law requires proof of intent to deceive but, rather, on the adjuster's conclusion that Arce's misrepresentation was, in fact, intentional. Because ANIC's summary-judgment motion only asserted a good-faith dispute about whether intent to deceive is required—not about whether it exists—summary judgment is not proper on Bertha's claims under sections 541.060 and 541.061 of the Insurance Code.

However, the court of appeals erred in reversing summary judgment based on ANIC's alleged failure to give timely notice under section 705.005. The court held that, as a matter of law, ANIC did not give notice within ninety days after discovering the alleged misrepresentation, which is true but beside the point.[41] The question is whether notice was required at all. It was not, because section 705.105 makes section 705.005 inapplicable to life insurance policies with a two-year incontestability period, like Arce's policy, when premiums have

---

[40] *See Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015).

[41] 633 S.W.3d 228, 236-37 (Tex. App.—Amarillo 2021).

been duly paid.[42] ANIC submitted affidavit evidence that the premiums were paid; the court of appeals upheld the trial court's decision overruling Bertha's objections to that evidence;[43] and Bertha has not appealed the adverse appellate ruling. Accordingly, we reverse and render judgment that section 705.005's notice requirement is inapplicable to Arce's life insurance policy as a matter of law.[44]

## IV

For the reasons stated, we reverse and render judgment that section 705.005's notice requirement does not apply to Arce's life insurance policy, but we otherwise affirm the court of appeals' judgment and remand to the trial court for further proceedings.

John P. Devine
Justice

**OPINION DELIVERED:** April 28, 2023

---

[42] *See* TEX. INS. CODE § 705.105.

[43] 633 S.W.3d at 232-33.

[44] *See Kachina Pipeline*, 471 S.W.3d at 449 (summary judgment is proper when no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law).